**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*pro hac vice* forthcoming)
Matthew A. Girardi (*pro hac vice* forthcoming)
Julian C. Diamond (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com
         mgirardi@bursor.com
         jdiamond@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIOT LIBMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

CLASS ACTION COMPLAINT

Plaintiff Elliot Libman (hereinafter "Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Apple, Inc. (hereinafter "Defendant" or "Apple"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE CASE

1. Defendant violates state law in connection with its illegal recording of consumers' confidential activity on its consumer mobile applications ("apps")—a huge and growing treasure trove of data that Apple amasses and uses for its own profit.

2. Consumers value their data privacy and increasingly find that their privacy is critical in a virtual and interconnected society. People everywhere are becoming more aware and concerned that large corporations are collecting, recording and exploiting for profit their personal communications and private information.

3. Well aware of these justified and growing concerns over privacy, Apple—the world's largest technology company—has assured and continues to assure its consumers and users that, when it comes to mobile app activity, users are in control of what information they share. For example, Apple's Advertising & Privacy Policy states on the first page:

> Apple-delivered advertising helps people discover apps, products, and services while respecting user privacy. Apple's advertising platform is designed to protect your information and *give you control over how we use your information*.[1]

(emphasis added).

4. Apple purports to offer consumers the option to control what app browsing and activity data Apple collects by adjusting their privacy settings to turn off "Allow Apps to Request to Track" before opening or browsing mobile apps. Apple repeatedly assures its consumers that "Apple requires app developers to ask for permission before they track your activity." Thus, the necessary implication is that apps that do not ask for permission cannot track your activity.

---

[1] https://www.apple.com/legal/privacy/data/en/apple-advertising/ (last accessed November 10, 2022).

5. Additionally, Apple's iPhone and iPad Analytics settings make an explicit promise. Apple says that it will "disable [the sharing of] Device Analytics altogether" if a consumer turns off, respectively, "Share iPhone Analytics" or "Share iPad Analytics."[2]

6. Based on these explicit representations, consumers reviewing Apple's privacy controls are left with the reasonable impression that Apple will stop collecting and recording all of their app information or activity if "Allow Apps to Request to Track" and/or "Share [Device] Analytics" settings are turned off.

7. But Apple's assurances and promises regarding privacy are utterly false.

8. Apple records, tracks, collects and monetizes analytics data—including browsing history and activity information—regardless of what safeguards or "privacy settings" consumers undertake to protect their privacy. Even when consumers follow Apple's own instructions and turn off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" on their privacy controls, Apple nevertheless continues to record consumers' app usage, app browsing communications, and personal information in its proprietary Apple apps, including the App Store, Apple Music, Apple TV, Books, and Stocks.

9. Security researchers at the software company Mysk found the analytics controls discussed above and other privacy settings had no obvious effect on Apple's data collection—the tracking remained the same whether iPhone Analytics was switched on or off.[3]

10. Apple's practices infringe upon consumers' privacy; intentionally deceive consumers; give Apple and its employees power to learn intimate details about individuals' lives, interests, and app usage; and make Apple a potential target for "one-stop shopping" by any government, private, or criminal actor who wants to undermine individuals' privacy, security, or freedom. Through its pervasive and unlawful data tracking and collection business, Apple knows

---

[2] If a consumer has an Apple Watch paired to their iPhone, they must instead turn off the setting for "Share iPhone and Watch analytics" for the same effect. Hereinafter, this setting, across devices, will be referred to as "Share [Device] Analytics."

[3] https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558 (last accessed November 10, 2022).

CLASS ACTION COMPLAINT 2

even the most intimate and potentially embarrassing aspects of the user's app usage—regardless of whether the user accepts Apple's illusory offer to keep such activities private.

11. California privacy laws prohibit unauthorized recording of confidential communications.

12. Plaintiff is an individual whose mobile app usage was tracked by Apple during the period after Apple first offered users the ability to turn off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" and the present (the "Class Period") with his or her "Allow Apps to Request to Track" and/or "Share [Device] Analytics" turned off.

13. Apple's tracking and data collection included detailed data collected by Apple, whereby Apple created and monetized user information without those users' consent.

14. Plaintiff brings state law claims on behalf of other similarly-situated iPhone and iPad users in the United States (the "Class") arising from Apple's knowing and unauthorized recording, copying, taking, use, and tracking of consumers' communications and activity, and its knowing and unauthorized invasion of consumer privacy.

**PARTIES**

15. Plaintiff Elliot Libman is a resident of New York, New York, and a citizen of New York. Plaintiff Libman currently owns an Apple iPhone 13 that he purchased from Defendant through a T-Mobile store in or around May 2022. Plaintiff Libman regularly accesses iPhone apps including the App Store, Apple Music, Apple TV, Books, and/or Stocks. Plaintiff Libman has turned off "Allow Apps to Request to Track" and "Share iPhone Analytics" on his privacy controls. Despite this, Apple has accessed Plaintiff's data while "Allow Apps to Request to Track" and "Share iPhone Analytics" were turned off.

16. Defendant Apple, Inc. is a California Corporation with its principal place of business in Cupertino, California.

**JURISDICTION AND VENUE**

17. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of

the class is a citizen of a state different from any Defendant, the amount in controversy exceeds $5 million, exclusive of interest and costs, and the proposed class contains more than 100 members.

18. This Court has personal jurisdiction over the Defendant because Defendant maintains its principal place of business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and because Defendant maintains its principal place of business in this District.

## **GENERAL BACKGROUND**

20. Apple engages in the same surreptitious tracking practices with respect to consumer use of mobile apps.

21. Apple can identify certain "actions" consumers take within an app.

22. For example, the App Store harvests information about every action users take while using the app in real time, including what users tapped on, which apps users search for, what ads users see, and how long users looked at a given app and how users found it. The App Store app sends details to Apple about users and their devices as well, including ID numbers, what kind of phone they are using, their screen resolution, their keyboard languages, how they're connected to the internet—notably, the kind of information commonly used for device fingerprinting.

23. Most of the apps that send analytics data share consistent ID numbers, which would allow Apple to track user activity across its services.

24. For example, the Stocks app sends Apple users' lists of watched stocks, the names stocks users viewed or searched for and time stamps for when users did it, as well as a record of any news articles users see in the app.

25. These findings are out of line with standard industry practices. For example, in both Google Chrome and Microsoft Edge, security experts have found that the above-described data is not sent when analytics settings are turned off.

26. Privacy is one of the main issues that Apple uses to set its products apart from competitors. In fact, Apple emblazoned 40-foot billboards of the iPhone with the simple slogan "Privacy. That's iPhone." and ran the ads across the world for months.

27. Apple uses this tracked data to, *inter alia*, enhance its targeted advertising algorithms.

28. Apple intentionally gives its consumers the impression that they have control over whether, how, and when Apple collects their personal app data. But Apple's privacy guarantees are completely illusory. Apple collects personal information and communications content from apps, originating from Apple iPhone and iPad users, irrespective of users' clearly expressed directives to Apple and Apple's promise to honor those directives.

29. The data Apple surreptitiously collects is precisely the type of private, personal information consumers wish and expect to protect when they take the steps Apple sets out for users to control the private information Apple collects. Apple knowingly and intentionally recorded, and continues to record, Plaintiff regardless of Plaintiff's directives to Apple and no matter how sensitive or personal his online app activities are.

30. There is no justification for Apple's secret, misleading, and unauthorized recording and collection of consumers' private communications and app activity. Even to the extent Apple claims it aggregates this data for later use, this process would occur only after Apple already recorded, collected, reviewed, and analyzed individual user information. What Apple does with consumers' individual mobile app information after it has secretly recorded it is cold comfort for those whose privacy Apple has already violated, especially because Apple repeatedly promises not to engage in this very behavior. By secretly breaking its privacy promises, Apple breaches its consumers' expectations of privacy—expectations that Apple itself has gone to great lengths to create through its false and lofty pronouncements about its concern for user privacy.

31. Plaintiff and Class members had a reasonable expectation of privacy that when using Apple apps while having turned off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" Apple would not collect, record, disclose, or otherwise misuse their personal communications and data.

32. Plaintiff's and Class members' expectation of privacy is deeply enshrined in California's Constitution. Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy*." (emphasis added).

33. The phrase "and privacy" was added in 1972 after voters approved a proposed legislative constitutional amendment designated as Proposition 11. Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating:

> The right of privacy is the right to be left alone…It prevents government *and business interests* from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information. This is essential to social relationships and personal freedom.[4]

34. Consistent with the language and intent of Proposition 11, a number of studies examining the collection of consumers' personal data confirm that the surreptitious taking of personal, confidential, and private information—as Apple has done and does—violates expectations of privacy that have been established as general social norms. Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares a subscriber's personal data. Indeed, a recent study by Consumer Reports shows that 92% of Americans believe that internet companies should be required to obtain consent before selling or sharing their data and the same percentage of Americans believe internet companies should be required to provide consumers with a complete list of the information that has been collected about them.[5] Here, what Apple does is even worse. Consumers explicitly tell Apple they **do not** want their communications monitored, and then Apple goes ahead and does it anyway.

---

[4] BALLOT PAMP., PROPOSED STATS. & AMENDS. TO CAL. CONST. WITH ARGUMENTS TO VOTERS, GEN. ELECTION *26 (Nov. 7, 1972) (emphasis added).

[5] Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds, CONSUMER REPORTS (May 11, 2017),

35. Apple's continuous recording of consumers' communications and massive consumer-data collection efforts is no accident. Apple is the largest technology company in the world. It is estimated that more than 2.2 billion iPhones have been sold as of 2022, and Apple boasts a net worth of over $2 trillion.

36. Much of Apple's enormous financial success results from its tracking and collection of consumer personal information.

37. Apple profits from consumers by acquiring their sensitive and valuable personal information. Through its various unauthorized tracking practices, Apple plants numerous tracking mechanisms on consumers' devices and apps, which allow Apple to track consumers' app browsing histories and correlate them with user, device, and browser IDs.

38. The information Apple tracks has and had massive economic value during the Class Period. This value is well understood in the e-commerce industry, and personal information is now viewed as a form of currency.

39. Professor Paul M. Schwartz noted in the Harvard Law Review:

> Personal information is an important currency in the new millennium. The monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from the trend. Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information.

Paul M. Schwartz, Property, Privacy and Personal Data, 117 HARV. L. REV. 2055, 2056–57 (2004).

40. Likewise, in the Wall Street Journal, former fellow at the Open Society Institute (and current principal technologist at the ACLU) Christopher Soghoian noted:

> The dirty secret of the Web is that the "free" content and services that consumers enjoy come with a hidden price: their own private data. Many of the major online advertising companies are not interested in the data that we knowingly and willingly share. Instead, these parasitic firms covertly track our web-browsing activities, search behavior and geolocation information. Once collected, this mountain of data is analyzed to build digital dossiers on millions of consumers, in some cases

---

https://www.consumerreports.org/consumerreports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

identifying us by name, gender, age as well as the medical conditions and political issues we have researched online.

Although we now regularly trade our most private information for access to social-networking sites and free content, the terms of this exchange were never clearly communicated to consumers.

Julia Angwin, How Much Should People Worry About the Loss of Online Privacy?, THE WALL STREET J. (Nov. 15, 2011), https://www.wsj.com/articles/SB10001424052970204190704577024262567105738.

41. The cash value of consumers' personal information provided during the Class Period to Apple is quantifiable. For example, in a study authored by Tim Morey, as early as 2011, researchers studied the value that 180 internet consumers placed on keeping personal data secure.[6] Contact information was valued by the study participants at approximately $4.20 per year. Demographic information was valued at approximately $3.00 per year. But web browsing histories were valued at a much higher rate: $52.00 per year. The chart below summarizes the findings:



42. As demonstrated above, user-correlated mobile app-page history has monetary value. Apple's actions—its unauthorized collection and use of Plaintiff's and Class members'

---

[6] Tim Morey, What's Your Personal Data Worth?, DESIGN MIND (Jan. 18, 2011), https://web.archive.org/web/20131206000037/http://designmind.frogdesign.com/blog/what039syour-personal-data-worth.html.

data—directly caused Plaintiff's and Class members' data to be sold without permission and to become less valuable. These actions have unjustly enriched Apple. Plaintiff and Class members retain a stake in the profits Apple garnered from Plaintiff's and Class members' personal data, including without limitation their browsing histories, and it is unjust for Apple to retain it.

43. User-correlated mobile app-page history also has non-monetary, privacy value. For example, in a recent study by the Pew Research Center, 93% of Americans said it was "important" for them to be "in control of who can get information" about them. Seventy-four percent said it was "very important." Eighty-seven percent of Americans said it was "important" for them not to have someone watch or listen to them without their permission. Sixty-seven percent said it was "very important." And ninety percent of Americans said it was "important" that they be able to "control[] what information is collected about [them]." Sixty-five percent said it was very important.

44. Likewise, in a 2011 Harris Poll study, seventy-six percent of Americans agreed that online companies control too much of our personal information and know too much about our browsing habits.

45. The applicable statutes of limitations have been tolled by Apple's knowing and active concealment and denial of the facts alleged herein.

46. Apple has repeatedly represented that its users could prevent Apple from tracking user app viewing history and activity data by turning off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" from their Apple device's privacy controls, including in the precise location where users enable or disable these very settings. Nowhere did Apple ever represent that it would continue to track and record user data once these steps were performed, nor has Apple ever disclosed that it will still attempt to collect, aggregate, and analyze user data so that it can continue to track individual consumers even when the user has followed Apple's instructions on how to use mobile apps privately.

47. Accordingly, Plaintiff and the Class could not have reasonably discovered the truth about Apple's practices until shortly before this class litigation was commenced. Plaintiff only learned of the truth in the weeks leading up to the filing of this Complaint.

## CLASS ALLEGATIONS

48. Plaintiff seeks to represent a class defined as:

   All individuals who during the Class Period (a) turned off "Allow Apps to Request to Track," "Share iPhone Analytics," "Share iPhone & Watch Analytics," and/or "Share iPad Analytics," and (b) whose mobile app activity was still tracked by Apple, (c) on an iPhone mobile device.

49. Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

50. Plaintiff reserves the right to expand, limit, modify, or amend the class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based on, inter alia, changing circumstances and/or new facts obtained.

51. **Numerosity**. On information and belief, hundreds of thousands of consumers fall into the definitions of the Class. Members of the Class can be identified through Defendant's records, discovery, and other third-party sources.

52. **Commonality and Predominance**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions include, but are not limited to, the following:

   (a) Whether Apple represented that the Class could control what communications of user information, app browsing history, and app activity data were recorded, received, or collected by Apple;

   (b) Whether Apple gave the Class a reasonable expectation of privacy that their communications of user information, app browsing history, and app activity data were not being recorded, received, or collected by Apple while "Allow Apps to Request to Track" and "Share [Device] Analytics" were turned off;

(c) Whether Apple in fact recorded, received, or collected communications of user information, app browsing history, and app activity from the Class while "Allow Apps to Request to Track" and "Share [Device] Analytics" were turned off;

(d) Whether Apple's practice of recording, receiving, or collecting communications of user information, app browsing history, and app activity violated state privacy laws;

(e) Whether Apple's practice of recording, receiving, or collecting communications of user information, app browsing history, and app activity violated state anti-wiretapping laws;

(f) Whether Apple's practice of recording, receiving, or collecting communications of user information, app browsing history, and app activity violated any other state laws;

(g) Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein; and

(h) Whether Plaintiff and the Class have sustained damages as a result of Apple's conduct, and if so, what is the appropriate measure of damages or restitution.

53. **Typicality**. Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

54. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

55. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class

obtain effective redress for the wrongs committed against the members on an individual basis. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

56. Further, Defendant has acted and refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
**Unjust Enrichment (Quasi-Contract Claim for Restitution and Disgorgement) or, alternatively, Breach of Contract**

57. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

58. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

59. Plaintiff and Class members unwittingly conferred a benefit upon Apple. Apple took and retained valuable personal information belonging to Plaintiff and Class members when it intentionally and comprehensively obtained their personal without their consent, despite representing that Apple would stop collecting Plaintiff and Class members mobile app information or activity if the "Allow Apps to Request to Track" and/or "Share [Device] Analytics" settings are turned off.

60. Apple was enriched when it utilized Plaintiff's and Class members' personal information stored without consent for its own financial advantage to optimize its advertising

platform, including by allowing its paying advertisers to target Plaintiff and Class members for lucrative advertisements.

61. Apple was enriched when it utilized Plaintiff's and Class members' personal information stored without consent for its own financial advantage to build better services, to maintain and improve Apple's services, to develop new services, and to measure performance, all of which enable Apple to, and which Apple does use, to create operational efficiencies and be competitive in a wide array of industries.

62. In exchange for Plaintiff's and Class members' loss of privacy and the financial benefits Apple enjoyed as a result thereof, including, but not limited to, advertising profits, while Plaintiff and Class members received nothing.

63. Defendant has knowledge of such benefits.

64. It would be inequitable for Apple to retain the benefits it has unjustly received. Therefore, as a result of Apple's actions, Plaintiff and Class members seek an order that Apple disgorge the profits and other benefits it has unjustly obtained.

65. Alternatively, to the extent Apple successfully asserts that the Terms of Service form a binding contract that sufficiently defines the parties' rights regarding Apple's use of Plaintiff's and Class members' location information, thereby rendering a claim for unjust enrichment unavailable (which Plaintiff denies in the first instance), then Plaintiff alleges that Apple's conduct constitutes a breach of any such binding contract. For example, Apple's Terms of Service incorporate Apple's Privacy Policies, and in those Privacy Policies, Apple promises that "Apple requires app developers to ask for permission before they track your activity." Apple breaches this contract by furtively allowing Apple apps to track user activity despite not asking for permission to do so.

66. To the extent Plaintiff seeks equitable relief, Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in

other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims for restitution entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

## COUNT II
### Violation Of The California Invasion Of Privacy Act ("CIPA")
### California Penal Code § 632

67. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

68. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

69. The California Invasion of Privacy Act is codified at Cal. Penal Code §§ 630 to 638. The Act begins with its statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

70. Cal. Penal Code § 632(a) provides, in pertinent part:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a

telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars . . . .

71. A defendant must show it had the consent of all parties to a communication.

72. Apple maintains its principal place of business in California; designed, contrived and effectuated its scheme to track and record consumer communications while they were browsing apps from their device while "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off; and has adopted California substantive law to govern its relationship with its users.

73. At all relevant times, Apple's tracking and recording of Plaintiff's communications while using an app with "Allow Apps to Request to Track" and/or "Share [Device] Analytics" turned off was without authorization and consent from the Plaintiff.

74. Apple's mobile applications constitute an "amplifying or recording device" under the CIPA.

75. Plaintiff has suffered loss by reason of these violations, including, but not limited to, violation of his rights to privacy and loss of value in their personally identifiable information.

76. Pursuant to California Penal Code § 637.2, Plaintiff has been injured by the violations of California Penal Code § 632, and seeks damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

## COUNT III
### Invasion Of Privacy

77. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

78. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

79. The right to privacy in California's constitution creates a right of action against private entities such as Apple.

80. The principal purpose of this constitutional right was to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Apple.

81. To plead a California constitutional privacy claim, a plaintiff must show an invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

82. As described herein, Apple has intruded upon the following legally protected privacy interests:

   a. The California Wiretap Act as alleged herein;

   b. A Fourth Amendment right to privacy contained on personal computing devices, including web-browsing history, as explained by the United States Supreme Court in the unanimous decision of *Riley v. California*;

   c. The California Constitution, which guarantees Californians the right to privacy;

   d. Apple's Privacy Policy and policies referenced therein, and other public promises it made not to track or record Plaintiff's communications or access their computing devices and apps while "Allow Apps to Request to Track" and/or "Share Device & Watch Analytics" are turned off.

83. Plaintiff had a reasonable expectation of privacy under the circumstances in that Plaintiff could not have reasonably expected that Apple would commit acts in violation of state civil and criminal laws; and Apple affirmatively promised consumers it would not track their communications or access their computing devices or apps while they were using an app while in "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off.

84. Apple's actions constituted a serious invasion of privacy in that it:

   a. Invaded a zone of privacy protected by the Fourth Amendment, namely the right to privacy in data contained on personal computing devices, including user data, app activity and app browsing histories;

   b. Violated dozens of state criminal laws on wiretapping and invasion of privacy, including the California Invasion of Privacy Act;

        c.      Invaded the privacy rights of millions of Americans without their consent; and

        d.      Constituted the unauthorized taking of valuable information from millions of Americans through deceit.

85. Committing criminal acts against millions of Americans constitutes an egregious breach of social norms that is highly offensive.

86. The surreptitious and unauthorized tracking of the internet communications of millions of Americans, particularly where, as here, they have taken active (and recommended) measures to ensure their privacy, constitutes an egregious breach of social norms that is highly offensive.

87. Apple's intentional intrusion into Plaintiff's internet communications and their computing devices and apps was highly offensive to a reasonable person in that Apple violated state criminal and civil laws designed to protect individual privacy and against theft.

88. The taking of personally identifiable information from millions of Americans through deceit is highly offensive behavior.

89. Secret monitoring of private app browsing is highly offensive behavior.

90. Wiretapping and surreptitious recording of communications is highly offensive behavior.

91. Apple lacked a legitimate business interest in tracking consumers while use an app while "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off, without their consent.

92. Plaintiff and the Class members have been damaged by Apple's invasion of their privacy and are entitled to just compensation and injunctive relief.

93. Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not

equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims for restitution entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates the laws referenced herein;

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as the Court may deem proper; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

# DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  November 10, 2022  **BURSOR & FISHER, P.A.**

By:  /s/ *L. Timothy Fisher*
       L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*pro hac vice* forthcoming)
Matthew A. Girardi (*pro hac vice* forthcoming)
Julian C. Diamond (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  pfraietta@bursor.com
              mgirardi@bursor.com
              jdiamond@bursor.com

*Attorneys for Plaintiff*