Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-7030
Facsimile: (415) 955-6530
Email: aheath@cov.com

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IN RE APPLE DATA PRIVACY LITIGATION

Civil Case No.: 5:22-CV-07069-EJD

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT**

Date: March 21, 2024
Time: 9:00 AM
Location: Courtroom 4 - 5th Floor
Judge: Hon. Edward J. Davila

## TABLE OF CONTENTS


INTRODUCTION ............ 1

ARGUMENT ............ 2

I. PLAINTIFFS' CONCLUSORY ALLEGATIONS DO NOT STATE A CLAIM OR ESTABLISH STANDING. ............ 2

II. PLAINTIFFS DO NOT DISPUTE THAT APPLE EXTENSIVELY DISCLOSED THE ALLEGED COLLECTION, AND THEIR INTERPRETATION OF THE CONTROLS AT ISSUE IS NOT PLAUSIBLE. ............ 4

III. THE OPPOSITION DOES NOT REVIVE PLAINTIFFS' CONTRACT-RELATED CLAIMS. ............ 7

A. Plaintiffs Do Not Allege a Breach of Any Contract. ............ 7

B. Plaintiffs' Damages Theories Are Neither Cognizable Nor Sufficiently Pled. ............ 9

C. The Contract-Related Claims Suffer Other Fatal Flaws. ............ 9

IV. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE A WIRETAP OR PRIVACY CLAIM. ............ 10

A. Plaintiffs Fail To Show How Their Allegations Support a CIPA Section 632 Claim. ............ 10

B. The Opposition Confirms That the WESCA Claim Fails. ............ 13

C. Apple Did Not Invade Plaintiffs' Privacy. ............ 15

V. PLAINTIFFS CANNOT CURE THE DEFICIENCIES IN THEIR STATE-LAW CONSUMER PROTECTION CLAIMS. ............ 17

A. Plaintiffs Do Not Allege a Viable Fraudulent Misrepresentation Theory. ............ 17

B. Plaintiffs Do Not Allege a Viable Fraudulent Omission Theory. ............ 18

C. Plaintiffs Do Not Allege Cognizable Damages. ............ 19

VI. EQUITABLE RELIEF IS PRECLUDED. ............ 20

VII. JUDICIAL NOTICE IS PROPER. ............ 20

CONCLUSION ............ 20

## TABLE OF AUTHORITIES

**Cases**

*Adam Askari D.D.S. Corp. v. U.S. Bancorp*,
2022 WL 2161603 (N.D. Cal. June 15, 2022) .......... 2, 17, 18

*In re Anthem, Inc. Data Breach Litig.*,
2016 WL 3029783 (N.D. Cal. May 27, 2016) .......... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 13, 16

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 13

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 3

*Commonwealth v. Cruttenden*,
58 A.3d 95 (Pa. 2012) .......... 13

*Commonwealth v. Diego*,
119 A.3d 370 (Pa. Super. 2015) .......... 14, 15

*Commonwealth v. Proetto*,
771 A.2d 823 (Pa. Super. 2001) .......... 13

*Cook v. GameStop, Inc.*,
2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) .......... 14

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .......... 11

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 2, 4, 13, 16

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 12

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 4, 16

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 4

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 11, 16, 17

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) .......... 12

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) .......... 18

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 17

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
957 F.3d 1038 (9th Cir. 2020) .......... 8

*Jajco, Inc. v. Leader Drug Stores, Inc.*,
2013 WL 875957 (N.D. Cal. Mar. 7, 2013) .......... 8, 9

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .......... 14

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 2, 3

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 18

*Kumandan v. Google LLC*,
2022 WL 103551 (N.D. Cal. Jan. 11, 2022) .......... 19

*Leonard v. McMenamins, Inc.*,
2022 WL 4017674 (W.D. Wash. Sept. 2, 2022) .......... 4

*Lokey v. CVS Pharmacy, Inc.*,
2020 WL 6822890 (N.D. Cal. Nov. 20, 2020) .......... 5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 3

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 17

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 13

*Meyer v. Aabaco Small Bus., LLC*,
2018 WL 306688 (N.D. Cal. Jan. 5, 2018) .......... 19

*Mikulsky v. Bloomingdale's, LLC*,
2024 WL 337180 (S.D. Cal. Jan. 25, 2024) .......... 15

*Mikulsky v. Noom, Inc.*,
2023 WL 4567096 (S.D. Cal. July 17, 2023) .......... 2

*Murj, Inc.v. Rhythm Mgmt. Grp., Inc.*,
2022 WL 3589574 (N.D. Cal. Aug. 22, 2022) .......... 20

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 16

*Oliver v. Noom, Inc.*,
2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) .......... 15

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) .......... 12

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......... 5

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .......... 14, 15

*Popa v. PSP Grp., LLC*,
2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) .......... 2, 3, 15

*Randall v. Univ. of the Pac.*,
2022 WL 1720085 (N.D. Cal. May 28, 2022) .......... 10

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 13

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 16

*Rudgayzar v. Yahoo! Inc.*,
2012 WL 5471149 (N.D. Cal. Nov. 9, 2012) .......... 9

*Russo v. Microsoft Corp.*,
2021 WL 2688850 (N.D. Cal. June 30, 2021) .......... 2

*S & M Inv. Co. v. Tahoe Reg'l Plan. Agency*,
911 F.2d 324 (9th Cir. 1990) .......... 10, 11

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) .......... 1, 8, 9

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113 (N.D. Cal. 2020)....6

*Silver v. Stripe, Inc.*, 2021 WL 3191752 (N.D. Cal. July 28, 2021)....5

*Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017)....5

*Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018)....5, 6

*Swarts v. Home Depot, Inc.*, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023)....13

*Tabak v. Apple, Inc.*, 2020 WL 9066153 (N.D. Cal. Jan. 30, 2020)....19

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962 (C.D. Cal. 2014)....18

*TBG Ins. Servs. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443 (2002)....12

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017)....16

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014)....5, 15, 16

*Yockey v. Salesforce, Inc.*, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023)....15

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021)....16

**Statutes**

18 U.S.C. § 2510(5)....11

Cal. Penal Code § 632(a)....11

**Other Authorities**

Fed. R. Evid. 201(b)....20

Fed. R. Civ. P. 9(b)....2, 18, 19

Fed. R. Civ. P. 12(b)(6)....1, 2

## INTRODUCTION

Plaintiffs' complaint is premised entirely on tweets by two app developers about data collection, which Apple thoroughly disclosed. The opposition does not cure that fundamental defect in the complaint, which pervades all their claims, because the complaint still says nothing about what was collected *from plaintiffs*. Plaintiffs do not allege any facts about how they use Apple's apps, what data was collected from them, or what that data would have revealed. Without factual allegations about their own experiences, plaintiffs cannot show Article III standing or state any claims.

The opposition also confirms that each claim fails because plaintiffs agreed to data collection by the apps at issue by using them after receiving extensive disclosures. Plaintiffs do not dispute that (1) Apple disclosed what data it collected through Apple apps, (2) they had notice of the collection and used the apps anyway, (3) their actions constitute consent under relevant law, or (4) consent bars all their claims. That alone warrants dismissal. Plaintiffs' only response is to argue that they thought two unrelated settings would turn off *all* data collection in the apps. One setting, Allow Apps to Request to Track, controls whether apps can ask users' permission to track them across apps and websites *owned by other companies*. And the other, Share [Device] Analytics, governs a subset of technical performance data, as described in the accompanying disclosures. Plaintiffs cannot escape the uncontested disclosures for these two settings by advancing implausible interpretations of how the settings would function that are contradicted by the express language in the disclosures.

The complaint suffers from a range of other deficiencies warranting dismissal. Plaintiffs' contract claims cannot proceed because plaintiffs do not allege a breach or cognizable damages. The minor plaintiffs do not plead their ages, so have not shown that Apple's statements about children—which it defines as users under the age of 13 in the United States—apply to them.[1] Plaintiffs do not adequately

[1] On this point and others, plaintiffs' repeated attempts to supplement their complaint through new facts in the opposition should be rejected as contrary to Ninth Circuit law. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

allege multiple elements of their wiretap and privacy claims, underscoring the mismatch between criminal wiretapping statutes and the disclosed collection here. Finally, no plaintiff alleges reliance with the specificity required by Rule 9(b), dooming their consumer-protection claims. For these and the additional reasons discussed in Apple's motion to dismiss and below, the complaint should be dismissed.

## ARGUMENT

### I. Plaintiffs' Conclusory Allegations Do Not State a Claim or Establish Standing.

Apple argued in its motion that plaintiffs' factual allegations were insufficient to confer standing *or to state a claim*. MTD at 7-9. Plaintiffs acknowledge both arguments, Opp. at 3, yet they respond only to the standing argument, *id.* at 3-5. Indeed, plaintiffs specifically note that Apple cited cases "to argue that Plaintiffs' factual allegations are too conclusory to state claims," *id.* at 5, but they respond only that their allegations are "sufficient for standing," *id.* As the Ninth Circuit recently confirmed in a case plaintiffs invoke, "the injury-in-fact prong of Article III standing and the merits of a . . . claim are separate inquiries." *Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023); *see* Opp. at 4 (citing *Jones*). As a result, even if plaintiffs' arguments on standing were to prevail—and they should not for the reasons below—their failure to respond to Apple's argument on the insufficiency of their allegations under Rule 12 provides an independent basis to dismiss all the claims. *See Adam Askari D.D.S. Corp. v. U.S. Bancorp*, 2022 WL 2161603, at *3 (N.D. Cal. June 15, 2022) (Davila, J.) (plaintiffs concede arguments by failing to respond to them in opposition).

As to standing, plaintiffs argue they have standing merely because they assert privacy claims, and "violations of the right to privacy have long been actionable at common law." Opp. at 3 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)). The question is not whether an invasion of privacy *could* constitute a concrete harm under *TransUnion*; the Ninth Circuit resolved that in *Facebook Internet Tracking*. Instead, the question is whether plaintiffs have adequately alleged facts showing that *they personally* suffered a concrete injury to their privacy sufficient to confer standing. The "nature of the information at issue" is critical to that inquiry. *See Mikulsky v. Noom, Inc.*, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023); *see also Popa v. PSP Grp., LLC*, 2023 WL 7001456, at *3 (W.D. Wash. Oct. 24, 2023) (collecting cases); *Russo v. Microsoft Corp.*, 2021 WL 2688850, at *3 (N.D. Cal. June 30, 2021) (plaintiffs lacked standing in privacy case where they did not allege enough facts about

their use of the products to support an inference that they had been injured); MTD at 7-8.

The conclusory allegations here are insufficient to establish that plaintiffs suffered a concrete harm to their privacy. Two plaintiffs do not even say which apps they allegedly used. Compl. ¶¶ 16, 24. The others offer examples of apps they claim to use, but they say nothing about how they use these apps, what data was allegedly collected from them, or what any such data would have revealed about them. *Id.* ¶¶ 11-15, 17-23, 25. More is required, and nothing in the opposition alters that conclusion. MTD at 7-8.

Plaintiffs argue that they alleged details about the collection, pointing to several paragraphs asserting that the App Store collects data such as "which Apps were searched for, [and] what ads were displayed," as well as "device identification numbers, what kind of device was used, the device's screen resolution, the device's keyboard language, and how the user was connected to the internet." Opp. at 4 (citing Compl. ¶ 52). Plaintiffs do not explain how the collection of information about what ads Apple displayed to plaintiffs or a device's screen resolution or keyboard language "amounts to 'an invasion of privacy interests that have been historically protected.'" *Popa*, 2023 WL 7001456, at *3 (quoting *Cook v. GameStop, Inc.*, 2023 WL 5529772, at *3-4 (W.D. Pa. Aug. 28, 2023)). And although plaintiffs advance arguments suggesting that information about what apps a user searches for "*can be* sensitive," *e.g.*, searches for apps related to "religion, LGBTQ issues, health and addiction," those hypotheticals have no relevance here. Compl. ¶ 53 (emphasis added); *id.* ¶¶ 11-25. Plaintiffs do not allege that *they* performed any searches at all, let alone what those searches purportedly would have revealed about them.

Plaintiffs then contend that the decision in *Jones* "disposes of Apple's argument." Opp. at 4. It does not. In *Jones*, the Ninth Circuit did not address the question at issue here—whether a bare allegation of unspecified data collection establishes Article III injury. *See* 85 F.4th at 573. Instead, the Ninth Circuit assessed the factual allegations of plaintiffs' own experiences—that they exchanged private text messages with one another and their vehicle infotainment system downloaded and stored the private messages without their knowledge or consent—and found those allegations sufficient to confer Article III standing but not to state a claim on the merits. *Id.* at 573-74. Plaintiffs include no similar factual allegations of their own experiences here, and it is blackletter law that they cannot rely on hypothetical fact patterns to establish their own injury in fact. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (injury in fact must be "actual or imminent, not conjectural or hypothetical"); *see also Clapper v. Amnesty Int'l USA*,

568 U.S. 398, 410-11 (2013) (plaintiffs lacked standing where they did not show the challenged surveillance was likely to target *their* communications).

Finally, plaintiffs argue that they need not allege what data was collected about them, either because they made conclusory assertions that the data was "personal and sensitive" or because the nature of the data is irrelevant. Opp. at 5. Both arguments are unavailing. The first is barred by *Iqbal*, which requires factual allegations, not just "labels and conclusions" or "naked assertions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs also are wrong that the nature of the information does not matter because they have alleged it was collected without permission. *Id.* The cases they cite do not stand for such a broad proposition. *Google I* considered whether pecuniary harm was required for standing; the sensitivity of the collected data was not contested. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 134-35 (3d Cir. 2015) (*"Google I")*. And in *Google II*, *Facebook Internet Tracking*, and *Leonard*, the courts determined based on the facts alleged that the data at issue was personal and sensitive—not that the nature of the data was irrelevant. *Facebook Internet Tracking*, 956 F.3d at 599 (finding standing based on allegation that "cradle-to-grave profile" of users was collected); *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (*"Google II"*), (relying on traditional right to redress for disclosure of "information that, in Congress's judgment, ought to remain private"); *Leonard v. McMenamins, Inc.*, 2022 WL 4017674, at *1, *4-5 (W.D. Wash. Sept. 2, 2022) (finding standing where stolen data included "sensitive" information such as "disability status, medical notes, performance and disciplinary notes, Social Security number, health insurance plan election, [and] income amount," among other data).

Here, plaintiffs do not allege what data was collected from them, so they cannot pursue a claim.

## II. Plaintiffs Do Not Dispute That Apple Extensively Disclosed the Alleged Collection, and Their Interpretation of the Controls at Issue Is Not Plausible.

Plaintiffs do not dispute that (1) their consent under applicable law to the challenged collection would defeat all their claims; and (2) Apple extensively disclosed the exact collection they challenge and they proceeded to use the apps anyway. *See* Opp. at 8. Their only response is to argue that they thought that turning off two unrelated settings for device analytics and tracking across other companies' websites stopped *all* data collection from the apps, and that the Court cannot determine whether that alleged

understanding was reasonable on a motion to dismiss. *Id.* Contrary to plaintiffs' argument, courts routinely reject implausible readings of a disclosure statement at this stage of litigation, and plaintiffs' purported understanding here is facially unreasonable in light of Apple's express descriptions of the two settings and common sense. *See, e.g.*, *Silver v. Stripe, Inc.*, 2021 WL 3191752, at *4-5 (N.D. Cal. July 28, 2021) (resolving consent on motion to dismiss despite plaintiffs' argument that disclosure did not clearly disclose challenged collection); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017) (same); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212-14 (N.D. Cal. 2014) (same); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028-31 (N.D. Cal. 2014) (same); *see also, e.g.*, *Lokey v. CVS Pharmacy, Inc.*, 2020 WL 6822890, at *5 (N.D. Cal. Nov. 20, 2020) (dismissing claims based on implausible interpretation of label).

"In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018). As Apple laid out in its motion, the two settings each apply only to a subset of data collection, which is explained directly below each setting and in more detail in a linked disclosure. MTD at 12-14; *see also* RJN Exs. 14-17. As these disclosures make clear, Allow Apps to Request to Track governs only whether an app can *ask* to track users across apps or websites *owned by other companies*; plaintiffs do not allege that any tracking across other companies' sites occurred here. MTD at 12-13; *see also* Compl. ¶ 105 (screenshot of Tracking disclosure); RJN Exs. 3, 16 (explanations of setting). The disclosures likewise explain that Device Analytics data includes certain technical performance data, which users can review by tapping "Analytics Data," directly below the Share [Device] Analytics setting. *See* MTD at 4; RJN Exs. 14, 15. Nowhere does Apple represent that either of these settings controls *all* data collection. Even a cursory review of the Share [Device] Analytics setting screen makes clear that Apple allows users to control different types of collection and sharing through different settings. RJN Ex. 15 (multiple settings for different data). And plaintiffs do not explain why it would be reasonable to infer these settings had any effect other than what Apple described. *See Smith*, 745 F. App'x at *9 ("But Facebook's Terms and Policies make no such assurance, and Facebook is not bound by promises it did not make.").

Plaintiffs then attempt to argue they thought the two settings allowed them to withdraw consent

they had previously given for Apple to collect data within the apps. Opp. at 7. Once again, this relies on an implausible interpretation of those settings that contradicts their stated purpose and is reason alone for rejecting this argument. *See supra*, pp. 4-5. Moreover, plaintiffs' only identified support for this argument is a single sentence from Apple's Privacy Policy: "Where you are requested to consent to the processing of your *personal* data by Apple, you have the right to withdraw your consent at any time." Opp. at 7; RJN Ex. 3 at 3 (emphasis added). The Device Analytics & Privacy disclosure makes clear that "none of the collected information" controlled by the Share [Device] Analytics toggle "identifies you personally." RJN Ex. 14 at 1. It is thus not plausible to interpret that setting as controlling the collection of personal data. *See Smith*, 745 F. App'x at 8 (affirming dismissal based on what a reasonable user would understand from "the circumstances, considered as a whole"). Finally, plaintiffs ignore that the Privacy Policy's next sentence, in bold type, tells users how to exercise their privacy rights: "**[V]isit the Apple Data and Privacy page at privacy.apple.com**[.]" Compl. ¶ 48; RJN Ex. 3 at 3. Those instructions do not mention the settings at issue here. *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020) (plaintiff cannot plausibly allege falsity by "simply cherry-picking portions of Defendants' statements and ignoring other portions" (cleaned up)).

Plaintiffs' purported understanding that these settings turn off all data collection also defies common sense. As the disclosures make clear, the apps need certain data to provide the services and experiences users expect. Plaintiffs do not explain why it would be reasonable to expect the apps to work—including by delivering content, paying royalties for music they play, and syncing shows across devices—if *no* data can be transmitted to Apple after they turn off the Share [Device] Analytics or Allow Apps to Request to Track settings. Plaintiffs' purported understanding of these settings thus does not comport with basic logic or Apple's clear statements that the media services apps need certain data to function. *See, e.g.*, RJN Ex. 9 (App Store & Privacy) at 2 ("We collect your personal data so that we can provide you the content you purchase, download, or want to update in the App Store and other Apple online stores[.]"); RJN Ex. 10 (Apple Music & Privacy) at 1, 4-5 (Music collects data on what songs are played to pay royalties); Ex. 11 (Apple TV App & Privacy) at 1 (TV collects data about purchased and watched content so that it "can display what you're watching across your supported devices").

Because plaintiffs do not dispute that the collection was disclosed and because their interpretation

of the settings at issue is implausible, the complaint should be dismissed.

## III. The Opposition Does Not Revive Plaintiffs' Contract-Related Claims.

Plaintiffs' claims for breach of contract, implied contract, and implied covenant of good faith and fair dealing all fail because they do not adequately allege a breach or cognizable damages. The implied contract, implied covenant, and unjust enrichment claims also suffer from other flaws.

### A. Plaintiffs Do Not Allege a Breach of Any Contract.

Plaintiffs narrow their breach of contract claim to only three purported statements: (1) turning off Allow Apps to Request to Track would "block[]" apps "from accessing the device's Advertising Identifier"; (2) turning off Share [Device] Analytics would prevent Apple from "sending daily diagnostic and usage data"; and (3) Apple would "not knowingly collect, use, or disclose any personal information from your child without your verifiable parental consent unless a COPPA exception applies." Opp. at 10. The complaint does not allege a breach based on any of these statements, for multiple reasons.

First, plaintiffs have not established that the first two statements—found in the Tracking disclosure and Share [Device] Analytics settings screen, respectively—are a part of any contract. Plaintiffs cite no authority for the proposition that something appearing on a screen as a setting option for a device somehow sets forth a contractual agreement. Rather, they advance a contorted argument that the Privacy Policy incorporates all the device's settings merely because a reference to certain settings appears in the Privacy Policy. As Apple explained and the plain language of the Privacy Policy shows, that term as used in the Privacy Policy does not incorporate every setting available on the device. *See* MTD at 14-15; RJN Ex. 3 (Privacy Policy) at 1. Instead, it simply informs users where they can find additional "product-specific information" for certain features: both online and "in settings related to those features." *Id.*

Even if those statements were part of a contract, plaintiffs do not allege that Apple breached them:

***Allow Apps to Request to Track.*** As explained in the motion and above, the Allow Apps to Request to Track setting does not affect the challenged collection because plaintiffs do not and cannot allege that Apple tracked them across other companies' apps and websites. *See supra*, p. 5; MTD at 12-13. Plaintiffs now point to a statement in the Tracking disclosure saying the setting blocks apps from accessing the device's Advertising Identifier. *See* Opp. at 10; RJN Ex. 3 (Privacy Policy) at 9 (explaining effect of setting on access to Advertising Identifier). That theory fares no better: Plaintiffs do not allege

that Apple accessed the Advertising Identifier, let alone used it or anything else to track users across other companies' apps or websites, so they have not identified any inconsistency with that disclosure.

***Share [Device] Analytics.*** Plaintiffs next argue that because the description below this setting uses the phrase "usage data," Apple promised the setting would control all data related to the apps. Opp. at 10-11. Plaintiffs invoke a range of definitions of "usage" from other sources, from the dictionary to a website called Law Insider, but plaintiffs provide no authority for the assertion that the "popular interpretation" of a term can create ambiguity when the scope of collection already is defined by Apple's Device Analytics & Privacy disclosure. As discussed above, that disclosure relating to non-personal Device Analytics data cannot plausibly be interpreted to extend to *all* data collected by the apps to provide the content and services they offer. *See supra*, p. 6; *see also Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1044 (9th Cir. 2020) ("a contract must be interpreted as a whole, and in the circumstances of the case" and contract language is not "made ambiguous simply because the parties urge different interpretations").

***Family Disclosure.*** The theory of breach for the minor plaintiffs rests on the same settings as the adults' claims so it fails for the same reasons. Moreover, plaintiffs do not dispute that the Privacy Policy defines child as "an individual under the age of 13" in the U.S. and that the Family Disclosure incorporates the Privacy Policy. *See* RJN Ex. 3 (Privacy Policy) at 6; Ex. 18 (Family Disclosure) at 3 (incorporating Privacy Policy). As a result, the Family Disclosure statement at issue only applies in the United States to children under the age of 13. *See* Compl. ¶ 111 (stating Apple would "not knowingly collect, use, or disclose any personal information from your child without your verifiable parental consent unless a COPPA exception applies"). The complaint does not allege either E.M.'s or A.H.'s ages; it only says they are minors. *See* Compl. ¶¶ 16, 24. As a result, there is no factual basis in the complaint to conclude that Apple breached any promise that applied to E.M. or A.H. *See Schneider*, 151 F.3d at 1197 n.1 (opposition cannot cure deficiencies in complaint). Finally, plaintiffs assert for the first time in their opposition that the minor plaintiffs are third-party beneficiaries of the Family Disclosure. Opp. at 13. Unlike *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *16 (N.D. Cal. May 27, 2016), plaintiffs do not allege the minors were third-party beneficiaries of the Family Disclosure. Plaintiffs cannot survive dismissal by raising new allegations in their opposition. *See Schneider*, 151 F.3d at 1197 n.1; *Jajco, Inc. v. Leader Drug Stores, Inc.*, 2013 WL 875957, at *1 (N.D. Cal. Mar. 7, 2013) (dismissing contract claim

where the "complaint does not include allegations that [plaintiff] is an intended third party beneficiary").

**B. Plaintiffs' Damages Theories Are Neither Cognizable Nor Sufficiently Pled.**

"[A]ppreciable and actual damage" is an element of each of plaintiffs' contract-related claims. *See* MTD at 15. Apple explained in its motion why none of the three types of damages plaintiffs identify—nominal damages, "the value of their data," and "the premium they paid for Apple mobile devices not to be tracked"—suffice. *Id.* Plaintiffs' responses are not persuasive.

This Court already has held that nominal damages do not satisfy the damages element of a contract claim. *Rudgayzar v. Yahoo! Inc.*, 2012 WL 5471149, at *6 (N.D. Cal. Nov. 9, 2012) (Davila, J.). Plaintiffs cite one case to the contrary, Opp. at 15, but this Court's conclusion is the only logical result; to hold that nominal damages can satisfy the damages element would effectively eliminate that element.

As to the alleged decrease in the "value of their data," Apple explained that plaintiffs' allegations do not show they ever expected to be compensated for their data, they made any attempt to monetize it, or that the alleged collection would prevent them from doing so in the future. MTD at 15-16. Plaintiffs do not respond to any of these points, and their citation to an unpublished Ninth Circuit case that contains no reasoning cannot save this theory of damages. *See* Opp. at 15.

As to the purported "premium they paid for Apple mobile devices not to be tracked," Apple explained that none of the plaintiffs could have paid such a premium because none of them allege relying on any statement about tracking or data collection in deciding to purchase their device, nor do they allege any facts to support a premium. MTD at 16. In response, plaintiffs cite a press report comparing iPhone and Pixel prices. Opp. at 15. Those prices were not alleged in the complaint so should be disregarded. *Schneider*, 151 F.3d at 1197 n.1. Even if the Court were to consider these new allegations, they provide no support for the contention that any of the price difference is attributable to privacy or data collection practices: neither privacy nor data collection is mentioned in the article plaintiffs cite.

Finally, plaintiffs argue that because they are seeking specific performance and injunctive relief, that somehow means they have pled damages. Opp. at 15. Those are other types of remedies; they are not damages. The contract claims all should be dismissed for failure to plead damages.

**C. The Contract-Related Claims Suffer Other Fatal Flaws.**

Express and implied contracts cannot "exist[] at the same time" and cover "the same subject

matter." *Randall v. Univ. of the Pac.*, 2022 WL 1720085, at *4 (N.D. Cal. May 28, 2022). Plaintiffs do not dispute this but argue their implied contract and unjust enrichment claims are pled in the alternative to their contract claim. Opp. at 13. The complaint does not merely assert different legal theories in the alternative; it alleges that the same contractual documents are both express and implied contracts. *Id.* at 14 (alleging implied contract by combining marketing statements "with the express terms of the contract documents," including "license agreements[] and privacy disclosures"). Because even the implied contract claim alleges the existence of express contracts, it must be dismissed.

The implied covenant and unjust enrichment claims also fail for the reasons already explained: Apple thoroughly disclosed the challenged collection, and plaintiffs' unreasonable misreading of the settings at issue does not render Apple's disclosed collection bad faith or unjust. *See supra*, pp. 4-6.

## IV. The Complaint Does Not Plausibly Allege a Wiretap or Privacy Claim.

### A. Plaintiffs Fail To Show How Their Allegations Support a CIPA Section 632 Claim.

Plaintiffs' opposition underscores that they fail to allege any of the elements of a CIPA Section 632 claim and that they are attempting to shoehorn claims about their direct communications with Apple into a statute regulating eavesdropping by third parties.

***"Device."*** Plaintiffs' arguments that software constitutes a "device" should be rejected. Courts interpreting "device" under an analogous provision, CIPA Section 637.7, routinely hold that software is not a "device" under CIPA. MTD at 17-18. Plaintiffs argue those cases are distinguishable because Section 637.7 requires that the device "attach[] to a vehicle or other movable thing." Opp. at 16. According to plaintiffs, the "attach" requirement suggests a device under Section 637.7 must be "tangible," whereas Section 632 has no such requirement. *Id.* at 17. The "attach" requirement is not what is relevant here—those courts' interpretation of "device" is, and their reasoning on that score applies equally to Section 632. *See S & M Inv. Co. v. Tahoe Reg'l Plan. Agency*, 911 F.2d 324, 328 (9th Cir. 1990) ("When the same word or phrase is used in different parts of a statute, we presume that the word or phrase has the same meaning throughout."). In *Moreno v. S.F. Bay Area Rapid Transit Dist.*, the court noted two definitions of "device": (1) "a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment," and (2) "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). It

concluded that the BART app was not a "device." *Id.* Similarly, this Court explained that "[s]oftware like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA because they are not 'equipment.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (Davila, J.). And a third court recently applied the same reasoning to a Section 632 claim. *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) (dismissing CIPA Section 632 claim after finding that software is not an "amplifying or recording device"). Here, the opposition does not dispute that the App Store or Stocks apps, for example, are primarily designed for delivering content, not for amplifying or recording. Because the apps are not equipment designed primarily for amplifying or recording, they are not "devices" within the meaning of CIPA.

Plaintiffs turn next to cases interpreting the federal Wiretap Act, but this analogy is inapposite. Plaintiffs conflate CIPA's definition of what it regulates with the Federal Wiretap Act's definition, arguing that these differences are "a distinction without a difference." Opp. at 16. Not so. CIPA's definition specifies that a "device" is something primarily designed for "electronic amplifying or recording." Cal. Penal Code § 632(a); *see also Moreno*, 2017 WL 6387764, at *5 (referencing dictionary definitions of "device" to include the purpose). In contrast, the Wiretap Act defines "electronic, mechanical, or other device" more broadly, as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication[,]" with certain exceptions. *See* 18 U.S.C. § 2510(5). The Wiretap Act's references to "any device or apparatus" that can intercept "wire" or "electronic" communications are absent from CIPA. Accordingly, the Wiretap Act cases that have found that software is a device, *see* Opp. at 16, do nothing to undermine the conclusions reached by other courts interpreting CIPA's *different* definition. *See Doe*, 2023 WL 8780879, at *8; *Google Location Hist.*, 428 F. Supp. at 193. Similarly, plaintiffs cite one case that relied on cases interpreting the Federal Wiretap Act to conclude that software is a device under Section 632, but it is neither binding nor persuasive for the reasons just discussed. *See* Opp. at 17; *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *7 (N.D. Cal. Sept. 7, 2023). This Court should follow the cases that interpret CIPA on its own terms.

Plaintiffs further argue that they have alleged the iPhone, iPad, and Watch constitute "devices" within the meaning of CIPA. Opp. at 17. They did not. Count V, where plaintiffs allege CIPA violations, says only that "Apple's *mobile applications* constitute an 'amplifying or recording device' under CIPA,"

Compl. ¶ 157 (emphasis added), and says nothing about the iPhone, iPad, or Watch. In any event, plaintiffs miss the point. Their claims are fundamentally about their use of software: their allegations do not assert CIPA violations arising merely from their possession of a Watch, iPhone, or iPad, or from using those products to do anything other than engage with Apple's first-party apps.

***"Communication."*** Next, plaintiffs say they have adequately alleged that the data is a "communication" under CIPA, but their arguments overlook pertinent case law. Importantly, the California Court of Appeal has stated that for the purposes of Section 632, "the Legislature primarily equated 'communication' with conversation," and that CIPA was intended to protect against "an intrusion on one's thoughts, ideas, or knowledge." *People v. Drennan*, 84 Cal. App. 4th 1349, 1358 (2000); *see also Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 607 (2020) ("[T]he term 'communication' for purposes of CIPA connotes a singular conversation or exchange shared between two or more participants."). Plaintiffs do not allege what actions *they* took in Apple's apps or what data was allegedly collected from *them*—they point only to the kinds of information certain Apple apps are allegedly capable of collecting. Compl. ¶¶ 52-55. And even if those kinds of information were collected from them, it is unclear how the buttons a person "tapped on," the "ads" that "were displayed," "how the app was found," and "details about a user's mobile device," Compl. ¶ 52, constitute anything analogous to a "conversation" or to one's "thoughts, ideas, or knowledge." *Drennan*, 84 Cal. App. 4th at 1358.

***"Recording."*** Plaintiffs do not substantively address the point that their reading of "recording" would (implausibly) criminalize any Internet-based communications where an intended recipient received information in a recorded format and continued to save it. *See TBG Ins. Servs. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 452 n.8 (2002) ("messages [transmitted on the Internet] are received in a recorded format"). Recording a phone call—which a participant would not reasonably expect and which CIPA clearly was designed to regulate—plainly differs from receiving data on a server, which inherently occurs in a recorded format. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 768-69 (2002) (noting CIPA "replac[ed] prior laws that permitted the recording of telephone conversations with the consent of one party" and was intended to "protect the right of privacy by . . . requiring that all parties consent to a recording").

***"Confidential."*** Plaintiffs' argument that their data constitutes a "confidential communication" under Section 632 also is unavailing. Apple's privacy disclosures detail exactly what data Apple may

collect from users of its apps, so plaintiffs had no expectation that this data would be confidential from Apple. *See* MTD at 2-5. Plaintiffs claim that Apple never "disclose[d] that . . . it would continue [to] collect user activity and identifiers" from first-party apps if users turned off the "Share [Device] Analytics" and "Allow Apps to Request to Track" settings, Opp. at 19, but this is not true. Both settings clearly describe their effect on collection, and neither indicated that they would affect the collection detailed in Apple's privacy disclosures, let alone *all* data collection from the device. *See supra*, pp. 4-6; MTD at 2-5, 9-14. Nor do plaintiffs explain why California courts' "presumption that Internet communications do not reasonably give rise to" an expectation of confidentiality would not apply to the data collection here. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (same); *see also Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023) (chats with customer service agents not "confidential" under Section 632).

The cases plaintiffs rely on are inapplicable here. They involved findings that defendants had either failed to adequately disclose a challenged collection or affirmative statements that they would not collect the data at issue. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022) ("the policies at issue did not adequately disclose that [defendant] collects the kind of sensitive health information at issue"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1074 (N.D. Cal. 2021) (same); *Facebook Internet Tracking*, 956 F.3d at 603 (defendant made "affirmative statements that it would not receive information"). Here, Apple never stated it would not collect the data at issue, and Apple's extensive privacy disclosures clearly explain the types of data Apple may collect.

**B. The Opposition Confirms That the WESCA Claim Fails.**

As Apple's MTD explained, the WESCA claim cannot survive because Apple was a party to any communication plaintiffs challenge, and a party cannot be deemed to have wiretapped itself. *See* MTD at 19. In response, plaintiffs ask this Court to overlook a series of Pennsylvania cases that recognize this party exception to WESCA. *Commonwealth v. Proetto*, 771 A.2d 823, 831 (Pa. Super. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003); *Commonwealth v. Cruttenden*, 58 A.3d 95, 98-100 (Pa. 2012). They do so based on a 2012 amendment to WESCA postdating these cases that codified a direct-party exception where a law enforcement officer acquires communications as the "intended recipient" of the communication. Opp.

at 20; *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 127–28 (3d Cir. 2022). Although the Third Circuit interpreted that statutory change to limit the direct-party exception to just that specific factual scenario, at least one Pennsylvania court has found that a broader exception survives WESCA's amendment. *See Commonwealth v. Diego*, 119 A.3d 370, 380-81 (Pa. Super. 2015).[2] A case like this, where plaintiffs clearly knew they were interacting with Apple when using Apple's first-party apps, is emblematic of when the direct-party exception applies to bar a WESCA claim. *See id.* (permitting admission of recorded text messages sent to a direct party to a communication); *cf. Popa*, 52 F.4th at 124 (not recognizing direct-party exception where communication was intercepted both by a party with whom the plaintiff "obviously knew" she was interacting *and* by an unknown third party).

Next, plaintiffs argue that they pled an "interception" of the "contents" of their communications within the meaning of WESCA, but they do not explain how the data Apple collected from them—which they do not identify—falls in that category. Plaintiffs rely on *James v. Walt Disney Co.*, 2023 WL 7392285, at *11 (N.D. Cal. Nov. 8, 2023), which found that information about webpages viewed and searches conducted might constitute "contents" under WESCA. *James* draws a distinction with another recent case interpreting WESCA, *Cook*, 2023 WL 5529772, at *8, which found that allegations that plaintiff's "mouse movements and clicks, key strokes, and URLs of web pages visited" did not constitute the "'content' of 'communications.'" The alleged interceptions here—of "what was tapped on, which Apps were searched for, what ads were displayed, how long an app was viewed, and how the app was found," along with "details about a user's mobile device," *see* Compl. ¶¶ 52, 186—much more closely resemble the data found *not* to constitute "content" in *Cook* than that at issue in *James*. Moreover, plaintiffs provide no information about the actions *they* took in Apple's apps that were allegedly intercepted, so their "allegations lack sufficient detail to support a claim." *Cook*, 2023 WL 5529772, at *7 (noting that the allegations "lack[ed] critical necessary details for the Court's analysis of the type of

---

[2] Plaintiffs argue that *Diego* is "easily distinguishable" because the communication there "had ended before the contents were shared," whereas here the alleged "interception is occurring as consumers interact with Apple's Apps." Plaintiffs do not say why this distinction is relevant, particularly when they do not allege that Apple shared any of their data with a third party. *See* Opp. at 20-21.

information allegedly captured by [defendant]" even though "[a]ll this information should be available to [plaintiff]" because she was "the one who allegedly browsed [defendant's] website").

Plaintiffs' claims that they have alleged collection by a "device" under WESCA similarly fail. They conspicuously ignore the finding in *Diego* that a "text messaging device . . . was the *origin* of the intercepted message, and not the device that purportedly intercepted that message," 119 A.3d at 374 (emphasis added)—underscoring that a device performing an "interception" must be separate from the source of the communication. The cases plaintiffs cite do not change this analysis. In all of those cases, the alleged "device" at issue was third-party software that was installed on or embedded within the software with which the plaintiffs were interacting. *See Oliver v. Noom, Inc.*, 2023 WL 8600576, at *6 (W.D. Pa. Aug. 22, 2023) (third-party session replay code installed on defendant's website was "device"); *Popa*, 52 F.4th at 131 (same); *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *7 (N.D. Cal. Aug. 25, 2023) (third-party "Chat" interface on defendant's website was "device"). Here, plaintiffs assert that Apple's "iPhones, iPads, and Apple Watches are devices and the App software is rerouting their data," Opp. at 21-22; Compl. ¶ 185. Yet plaintiffs simultaneously claim that their iPhones, iPads, and Watches are also the "origin" of the data that was allegedly intercepted. *See* Compl. ¶¶ 1, 11-25 (alleging Apple collects users' data from apps "on their mobile Apple devices"). Therefore, the alleged "devices" and source of the data are the same. This fact distinguishes this case from *Oliver*, *Popa*, and *Yockey*, where third-party software was found to be the "device" within the meaning of WESCA.

### C. Apple Did Not Invade Plaintiffs' Privacy.

#### 1. No Legally Protected Privacy Interest Is at Issue on These Sparse Facts.

Plaintiffs do not dispute that they have not alleged any facts about how *they* used Apple's apps or about what information Apple allegedly collected about them. *See* MTD at 22-23; *see also Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041 (dismissing claims as "fatally conclusory" where there were no allegations about the contents of allegedly intercepted emails). This failure to allege what data Apple collected from them undermines their argument that they have adequately alleged Apple "disseminated" or "misused" *their* data. Opp. at 22.

Plaintiffs also disregard the series of cases in which courts have been "unwilling to find a cognizable privacy interest in [] data [collected] from users on Defendant's own website." *Mikulsky v.*

*Bloomingdale's, LLC*, 2024 WL 337180, at *8 (S.D. Cal. Jan. 25, 2024); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021); *Google Location Hist.*, 428 F. Supp. 3d at 198. The same principle applies here, where the allegations concern data drawn from Apple's own apps.

Plaintiffs cite three cases in which courts recognized an informational privacy interest, Opp. at 22, each of which involved data collection substantively different from that alleged here. *See Google I*, 806 F.3d at 151 (exploiting hidden loophole to circumvent users' cookie blockers and place cookies on plaintiffs' browsers); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1232 (C.D. Cal. 2017) (collecting plaintiffs' "video viewing histories" and resetting plaintiffs' opt-outs via software updates); *Facebook Internet Tracking*, 956 F.3d at 603 (tracking of logged-out users across third-party websites without disclosure). Plaintiffs do not assert what data was collected from them, and they fail to explain how the general types of data that plaintiffs say Apple might have collected, Compl. ¶¶ 52-55, are analogous to the "sensitive and confidential information" in which California has recognized an informational privacy interest. *See Google Location Hist.*, 428 F. Supp. 3d at 196-97.

**2. Plaintiffs Do Not Plead a Reasonable Expectation of Privacy in Data They Knowingly Agreed to Disclose.**

Plaintiffs' arguments do not show that they had a reasonable expectation of privacy from Apple in any collected data. Plaintiffs do not deny that they used Apple's apps after receiving extensive disclosures about the types of data collection at issue, *see* MTD at 23. And they do not explain why it would be reasonable to expect that information they provide *to Apple* when using Apple's apps would not be received *by Apple*. *See Yahoo Mail Litig.*, 7 F. Supp. 3d at 1030, 1041 (no reasonable expectation of privacy where Yahoo allegedly intercepted "private" emails after disclosing it may "scan[] and analyz[e] such communications content"). None of the cases plaintiffs cite supports a reasonable expectation of privacy here. *See* Opp. at 23. Each of those cases involved alleged third-party collection of user data from apps or websites owned by *other* companies. *See Brown*, 525 F. Supp. 3d at 1077 (alleging defendant collected data about users' activity on third-party websites); *Facebook Internet Tracking*, 956 F.3d at 602-03 (alleging defendant collected users' browsing histories on third-party websites); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (alleged collection from third-party apps using Google Firebase analytics); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 269 (3d Cir. 2016) (alleged third-party tracking of minor users' activities on website using cookies). Accordingly, plaintiffs

fail to show they had any reasonable expectation of privacy here.

**3. Disclosed Data Collection Is Not an "Egregious Breach" of Social Norms.**

Plaintiffs do not plausibly show how any data collection at issue here involved an "egregious breach" of social norms or the acquisition of "sensitive" data. Indeed, the opposition makes no attempt to explain how any of the data Apple allegedly collected from plaintiffs was "sensitive," much less so "serious and unwarranted [] as to constitute an egregious breach of the social norms." *Google Location Hist.*, 514 F. Supp. 3d at 1157. Plaintiffs' assertion that the allegedly "surreptitious[]" nature of Apple's data collection makes it "serious" in nature, Opp. at 24, falls flat. First, the collection was not surreptitious because Apple disclosed it to plaintiffs, *see supra*, pp. 4-6. Second, plaintiffs' failure to allege any facts about what data was collected from them forecloses any finding that the purported privacy invasion would be "highly offensive to a reasonable person." *Google Location Hist.*, 514 F. Supp. 3d at 1157; *Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022) (analyzing this element based on nature of data collected about plaintiffs).

Contrary to plaintiffs' argument that it is "a question of fact" whether the data collection was an egregious breach of social norms, Opp. at 24, courts regularly dismiss claims when plaintiffs fail to plead any facts showing that the data at issue was sensitive. *See supra* Section I; *see also, e.g.*, *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1140, 1142 (E.D. Cal. 2021) (dismissing claim where plaintiff "provide[d] no indication of the sensitivity of the communications at issue other than a conclusory assertion that they were 'personal and private'"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) (dismissing privacy claim where plaintiff did not "plausibly allege[] a serious invasion of privacy").

**V. Plaintiffs Cannot Cure the Deficiencies in Their State-Law Consumer Protection Claims.**

Plaintiffs' opposition fails to identify any actionable fraudulent statement or omission in the complaint, warranting the dismissal of their remaining state-law consumer-protection claims. And plaintiffs do not dispute that the UCL "unfair" and "unlawful" prongs are not satisfied, so those arguments are deemed conceded. *See* MTD at 29-30; *Adam Askari.*, 2022 WL 2161603, at *3. Plaintiffs' arguments on cognizable damages mirror their contract arguments and fail for the same reasons.

**A. Plaintiffs Do Not Allege a Viable Fraudulent Misrepresentation Theory.**

Plaintiffs' opposition confirms that their fraudulent misrepresentation theory is based on Apple's

statements "about its commitment to privacy and the safety of user[s'] data after selecting certain security settings." *See* Opp. at 26. Plaintiffs' allegations fail to satisfy Rule 9(b) for multiple reasons.

***No reliance.*** Plaintiffs concede their fraudulent misrepresentation claim is subject to Rule 9(b), which requires them to specify when they were exposed to the purported misleading statements and whether they relied on them. *See id.* at 28; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Plaintiffs' opposition contends that a "concerted advertising campaign" and representations Apple made on its websites, policies, and in its devices induced them to continue using the apps. *See* Opp. at 28-29. But none of the plaintiffs allege which specific statement, advertisement, or representation they viewed or when, as Rule 9(b) requires, and seven of them do not allege reliance at all. Those failures warrant dismissal. *See, e.g.*, *Kearns*, 567 F.3d at 1126 (allegations did not satisfy Rule 9(b) where they did not "specify what the television advertisements or other sales material specifically stated").

***No false or misleading statements.*** Plaintiffs' opposition points to certain statements regarding the Allow Apps to Request to Track or Share [Device] Analytics settings. *See* Opp. at 26 (citing Compl. ¶¶ 45-47, 106). It does not, however, explain how Apple's descriptions of those settings are false or misleading. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1093 (N.D. Cal. 2017) (where a plaintiff "does not contest that [a statement] [was] factually true," it cannot state a claim); *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 976 (C.D. Cal. 2014) (UCL fraud claim insufficiently pled "because plaintiffs have failed to identify any untruthful statement"). Indeed, Apple makes clear that these settings affect other collection not at issue here. *See supra,* pp. 4-6. Finally, plaintiffs do not dispute that Apple's statements in its policies and disclosures are not advertising and thus cannot support a GBL Section 350 claim. *See Adam Askari.*, 2022 WL 2161603, at *3.

***Non-measurable statements of product superiority.*** Plaintiffs fail to address Apple's argument that the other alleged statements, interviews, articles, billboards, and advertisements regarding Apple's commitment to privacy as a general principle, *see* Compl. ¶¶ 32-34, 36-43, are non-measurable statements that are not actionable in fraud. *See* MTD at 27. This argument should therefore be deemed conceded. *See Adam Askari*, 2022 WL 2161603, at *3.

**B. Plaintiffs Do Not Allege a Viable Fraudulent Omission Theory.**

In a single sentence, plaintiffs' opposition bases their fraudulent omission theory on a contention

that Apple was "obliged" to disclose the data collection at issue and purportedly failed to do so. *See* Opp. at 27. This theory cannot survive for three reasons: (1) Apple *did* disclose the challenged data collection in its Privacy Policy, welcome screens, and service-specific disclosures; (2) plaintiffs do not explain how their actions would have changed with any additional disclosures; and (3) they fail to identify a legal basis for a duty to disclose beyond what Apple already told them.

***Apple disclosed the data collection at issue.*** As discussed above, Apple's Privacy Policy, welcome screens, and service-specific disclosures *do* disclose the challenged data collection, and plaintiffs do not identify anything further that was required. *See supra*, pp. 4-6; *Kumandan v. Google LLC*, 2022 WL 103551, at *8-9 (N.D. Cal. Jan. 11, 2022) (rejecting omission theory where defendant's policies and public sources disclosed supposedly omitted information); *Meyer v. Aabaco Small Bus., LLC*, 2018 WL 306688, at *3 (N.D. Cal. Jan. 5, 2018) (similar).

***No reliance under Rule 9(b).*** Plaintiffs concede that Rule 9(b) requires them to allege with particularity that, had Apple made the specific disclosures they contend were required, plaintiffs would have been aware of those disclosures and would not have purchased their devices or used the Apple apps. *See* Opp. at 28-29; *Tabak v. Apple, Inc.*, 2020 WL 9066153, at *9 (N.D. Cal. Jan. 30, 2020). The complaint alleges no facts to support this required showing, and plaintiffs' opposition identifies none.

***No duty to disclose more.*** Plaintiffs do not dispute that there must be a legal basis for any duty to disclose under each of the consumer protection statutes. That duty exists only where the defendant (1) is the plaintiff's fiduciary, (2) has exclusive knowledge of material facts not known to the plaintiff, (3) actively conceals a material fact from the plaintiff, or (4) makes misleading partial representations. *See* MTD at 28. The opposition invokes only the second scenario, *see* Opp. at 27, but the complaint is devoid of allegations in support. Apple's Privacy Policy, welcome screens, and service-specific disclosures expressly disclosed the complained-of data collection, so plaintiffs knew too. This distinguishes the case plaintiffs cite. *See id.*

### C. Plaintiffs Do Not Allege Cognizable Damages.

Plaintiffs must allege the loss of money or property to establish statutory standing or plead a claim under the consumer protection laws. They contend they have done so, rehashing the same arguments they made for their contract claims. *Id.* at 28. Those arguments fail for the reasons discussed in Section III.B.

*See also* MTD at 29.

**VI. Equitable Relief Is Precluded.**

Plaintiffs' opposition "does not elaborate further" as to why the damages they seek under CIPA, WESCA, and GBL do not provide an adequate remedy at law, so their claims for equitable relief should be precluded. *See Apple Processor Litig.*, 2022 WL 2064975, at *11-12 (N.D. Cal. June 8, 2022) (Davila, J.) (dismissing unjust enrichment and UCL claims for failing to plead inadequate remedies at law); *see also Murj, Inc.v. Rhythm Mgmt. Grp., Inc.*, 2022 WL 3589574, at *5 (N.D. Cal. Aug. 22, 2022) (Davila, J.) (similar).

**VII. Judicial Notice Is Proper.**

Plaintiffs argue in a separate brief that the Court should not consider RJN Exhibits 1-18 because (1) the complaint purportedly does not extensively reference them, and (2) the availability of certain documents online is not a sufficient basis for judicial notice. ECF No. 125. Plaintiffs' own complaint directly contradicts their first argument. They quote extensively from the Privacy Policy (Ex. 3) and allege contract claims based on the Software License (Ex. 1), Privacy Policy (Ex. 3), settings at issue and related disclosures (Exs. 14-17), and Family Disclosure (Ex. 18). Compl. ¶¶ 46-48, 103-108, 111, 113. The Privacy Policy, in turn, incorporates the welcome screens and other disclosures. RJN Exs. 4-13. The purpose of incorporation by reference is to address this exact scenario. Moreover, all of plaintiffs' claims turn on whether Apple disclosed the collection at issue, so the text of Apple's disclosures is central. *See* RJN at 3. As to the second argument, plaintiffs do not dispute the accuracy or authenticity of any of the exhibits for which Apple seeks judicial notice. Each of those exhibits can be found online and is capable of accurate and ready determination. Fed. R. Evid. 201(b). The Court should consider the exhibits.

**CONCLUSION**

For the reasons stated, the complaint should be dismissed with prejudice.[3]

---

[3] None of the articles plaintiffs cite in their request for leave to amend have any bearing on the claims here and do not justify leave to amend. *See* Opp. at 30.

Dated: February 23, 2024

Respectfully submitted,

*/s/ Kathryn E. Cahoy*

Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-7030
Facsimile: (415) 955-6530
Email: aheath@cov.com

Attorneys for Defendant Apple Inc.