Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-7030
Facsimile: (415) 955-6530
Email: aheath@cov.com

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE DATA PRIVACY LITIGATION | Civil Case No.: 5:22-CV-07069-EJD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 28, 2025<br>Time: 9:00 AM<br>Location: Courtroom 4 - 5th Floor<br>Judge: Hon. Edward J. Davila |

## TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION ............................ **ERROR! BOOKMARK NOT DEFINED.**

MEMORANDUM IN SUPPORT ..................................................................................... 1

INTRODUCTION AND STATEMENT OF ISSUES ........................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

A. This Court Holds That Apple Disclosed the Challenged Data Collection. ...................... 2

B. Giving Plaintiffs the Benefit of All Reasonable Inferences, the Court Allowed Some of Their Claims To Proceed on Their “Share [Device] Analytics” Theory. .................... 4

C. The Court Dismissed All the Privacy-Based Claims Because Plaintiffs Had Not Alleged Sufficient Facts To State a Claim. ................................................................. 5

D. The Court Also Dismissed Plaintiffs’ UCL, Implied Contract, and Unjust Enrichment Claims for Independent Reasons. ............................................................ 6

E. The First Amended Complaint Attempts to Revive the Dismissed Claims and Includes a Handful of New Allegations. ............................................................... 6

LEGAL STANDARD ............................................................................................. 8

ARGUMENT ....................................................................................................... 8

I. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE A CALIFORNIA INVASION OF PRIVACY ACT CLAIM. ........................................................................... 8

A. The Complaint Does Not Allege the Elements of a CIPA Section 638.51 Claim for the Unlawful Use of a Pen Register. ................................................................. 9

B. The Complaint Does Not Allege the Elements of a CIPA Section 632 Claim for the Unlawful Recording of a Conversation. .......................................................... 13

II. THE COMPLAINT DOES NOT ALLEGE THE ELEMENTS OF A PENNSYLVANIA WESCA CLAIM. ........................................................................................ 17

III. APPLE DID NOT INVADE PLAINTIFFS’ PRIVACY RIGHTS UNDER THE CALIFORNIA CONSTITUTION. ........................................................................ 19

A. Plaintiffs Do Not Plead a Reasonable Expectation of Privacy Under the Circumstances at Issue. ........................................................................................ 20

B. The Sparse Allegations Do Not Identify a Legally Protected Privacy Interest. ............. 21

C. No “Egregious Breach” of Social Norms Has Been Pleaded. ......................................... 22

IV. THE UCL CLAIM FAILS FOR SEVERAL REASONS. .... 23

A. Plaintiffs Fail To Allege Lost Money or Property. .... 24

B. Plaintiffs' Omission Theory Does Not Satisfy Rule 9(b). .... 24

C. Plaintiffs Do Not Satisfy the "Unfair" or "Unlawful" Prongs. .... 25

V. THE IMPLIED CONTRACT AND UNJUST ENRICHMENT CLAIMS REMAIN DEFICIENT. .... 25

VI. THE ALLEGATIONS CONCERNING GAME CENTER SHOULD BE DISMISSED. .... 25

CONCLUSION .... 25

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................8

*Bell v. Farmers Ins. Exch.*,
87 Cal. App. 4th 805 (2001)....................................................12

*Boulton v. Community.com, Inc.*,
-- F. App'x --, 2025 WL 314813 (9th Cir. 2025) ....................................................13, 14

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010)....................................................25

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Sept. 9, 2024) ....................................................10, 12

*Commonwealth v. Cruttenden*,
58 A.3d 95 (Pa. 2012) ....................................................19

*Commonwealth v. Diego*,
119 A.3d 370 (Pa. Super. 2015) ....................................................18, 19

*Commonwealth v. Proetto*,
771 A.2d 823 (Pa. Super. 2001) ....................................................19

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ....................................................18

*Dep't of Corr. & Rehab. v. California State Pers. Bd.*,
147 Cal. App. 4th 797 (2007)....................................................12

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010)....................................................25

*Erceg v. LendingClub Corp.*,
475 F. Supp. 3d 1071 (N.D. Cal. 2020)....................................................14

*Fisher v. Nationstar Mortg. LLC*,
2018 WL 1933300 (N.D. Cal. Apr. 24, 2018)....................................................25

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011)....................................................23

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003) ........ 17

*Gerritsen v. FCA US LLC*,
2020 WL 3841304 (C.D. Cal. Mar. 3, 2020) ........ 24

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 16

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015) ........ 17

*In re Google Inc. Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........ 14, 16, 20

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........ 21, 22

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 10

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) ........ 15

*Heaven v. Prime Hydration LLC*,
761 F. Supp. 3d 812 (E.D. Pa. 2025) ........ 18

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ........ 22, 23

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 22

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........ 20, 21

*Hoang v. ContextLogic, Inc.*,
2023 WL 6536162 (N.D. Cal. Mar. 10, 2023) ........ 13

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 16

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
2007 WL 4394447 (E.D. Pa. Dec. 13, 2007) ........ 18

*Imperial Merch. Servs., Inc. v. Hunt*,
47 Cal. 4th 381 (2009) ........ 9

*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) .......... 18

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 23

*J.M. v. Huntington Beach Union High Sch. Dist.*,
2 Cal. 5th 648 (2017) .......... 11, 14

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 23

*Karriem v. Cnty. of Los Angeles*,
2020 WL 8474703 (C.D. Cal. Dec. 2, 2020) .......... 12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 8

*Lau v. Gen Digital Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) .......... 16

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .......... 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 23

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) .......... 8

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 23

*Morilha v. Alphabet Inc.*,
2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) .......... 23

*Napear v. Bonneville Int'l Corp.*,
669 F. Supp. 3d 948 (E.D. Cal. 2023) .......... 13

*People v. Blair*,
25 Cal. 3d 640 (1979) .......... 11

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) .......... 12, 15

*People v. Franco*,
6 Cal. 5th 433 (2018) .......... 11

*Popa v. Harriet Carter Gifts, Inc.*, 2025 WL 896938 (W.D. Pa. Mar. 24, 2025) ....... 19

*Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022) ....... 17, 19

*Quigley v. Yelp, Inc.*, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ....... 14

*Randall v. Univ. of the Pac.*, 2022 WL 1720085 (N.D. Cal. May 28, 2022) ....... 25

*Rivera v. Invitation Homes, Inc.*, 2019 WL 11863726 (N.D. Cal. June 19, 2019) ....... 19

*Rodriguez v. Google LLC*, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ....... 13

*S.D. v. Hytto Ltd.*, 2019 WL 8333519 (N.D. Cal. May 15, 2019) ....... 18

*Saeedy v. Microsoft Corp.*, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ....... 16

*Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ....... 10, 11, 12

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ....... 14

*Tabak v. Apple, Inc.*, 2020 WL 9066153 (N.D. Cal. Jan. 30, 2020) ....... 24

*TBG Ins. Servs. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443 (2002) ....... 17

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) ....... 20

*Van Buren v. United States*, 593 U.S. 374 (2021) ....... 10

*Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185 (Mass. 2024) ....... 8, 10, 15

*Warden v. Kahn*, 99 Cal. App. 3d 805 (Ct. App. 1979) ....... 8

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....... 19, 21

*Yith v. Nielsen*,
881 F.3d 1155 (9th Cir. 2018) ............................................................ 12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................ 16, 18, 21, 22

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) ............................................................ 17, 18

**Statutes**

18 Pa. C.S. § 5702 ............................................................ 17, 18

18 Pa. C.S. § 5703 ............................................................ 17

18 U.S.C. § 2510 ............................................................ 25

Cal. Bus. & Prof. Code § 17204 ............................................................ 24

Cal. Civ. Code § 1798.100 ............................................................ 8, 11

Cal. Penal Code § 632(a) ............................................................ 16

Cal. Penal Code § 632(c) ............................................................ 13

Cal. Penal Code § 637.2(a)(1) ............................................................ 8

Cal. Penal Code § 638.50(b) ............................................................ 9, 12

Cal. Penal Code § 638.51(a) ............................................................ 9, 11

Cal. Penal Code § 638.52(d)(1), (3) ............................................................ 10

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ............................................................ 15

California Privacy Protection Agency – Notice of Proposed Rulemaking (Nov. 22, 2024) .................. 8

The Editors of Encyclopaedia Britannica, How Does The Internet Work? (April 8, 2025) ....... 6, 14, 20

Federal Rule of Civil Procedure 9(b) ............................................................ 6, 24

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 28, 2025, at 9:00 a.m., Apple will and hereby does move under F.R.C.P. 9(b) and 12(b)(6) to dismiss the first amended complaint ("FAC"). The motion is based on the memorandum, documents incorporated by reference or judicially noticeable, and evidence and argument as the Court permits.

## MEMORANDUM IN SUPPORT

## INTRODUCTION AND STATEMENT OF ISSUES

Plaintiffs brought this case to challenge data collection in five Apple first-party apps, implausibly claiming that they believed *all* data transmission in these Internet-connected apps would cease if they turned off their Share [Device] Analytics setting. The Court previously rejected plaintiffs' privacy and UCL claims because plaintiffs failed to allege facts about data purportedly collected from them, how any of that data could constitute a confidential communication, or how they lost money or property as a result.

Plaintiffs' FAC does not fix these deficiencies. Four of the ten remaining plaintiffs add no new factual allegations about any data allegedly collected from them. The other six plaintiffs add allegations about limited transmissions to Apple's servers, but their allegations only confirm that such transmissions neither constitute confidential communications nor amount to an egregious breach of social norms. Plaintiffs add generalized allegations about Apple's Game Center—which is a social gaming network service, not an app—yet the FAC fails even to allege that any plaintiff used the service. Unsurprisingly, plaintiffs' amended complaint again fails to demonstrate how the routine transmission of data to enable Apple's Internet-connected apps could violate privacy or unfair competition laws.

And plaintiffs' new claim under the pen register provision of the California Invasion of Privacy Act fares no better. That statute requires law enforcement to obtain a court order before installing or using a pen register, a device that records the outgoing numbers dialed from a telephone. It does not apply here for multiple reasons, including that returning search results within an app does not equate to installing an illegal pen register. To hold otherwise would risk the absurd result of requiring all Internet-connected app and website owners to proactively seek a court order to operate.

## STATEMENT OF FACTS

### A. This Court Holds That Apple Disclosed the Challenged Data Collection.

Starting from the moment a user sets up their device, Apple provides transparency into what data is collected through Apple apps and how that data is used. Contrary to plaintiffs' allegation that Apple's apps "secretly" collect data, FAC ¶ 48, Apple notifies users of collection at multiple points, including in the devices' software license agreements presented during device setup, through the Privacy Policy, and as part of a "welcome screen" when the user first opens an app that collects personal data. Those welcome screens link to a detailed service-specific privacy disclosure tailored to the app, which is available on the device and online. The Court found that these "combined disclosures are sufficient to establish that by using their devices," plaintiffs would "be on notice that Apple engaged in the contested data collection practices." Order Granting in Part and Denying in Part Motion to Dismiss, ECF No. 138 ("Order") at 15. The combination of disclosures Apple provides includes the following:

***Software License Agreement.*** As part of a device's setup process, users agree to a software license. *See* RJN Ex. 1 (iOS/iPad 16 Software License) at 1; Ex. 2 (watchOS Software License) at 1; *see also* FAC ¶ 109 (citing license).[1] In a section titled "Consent to Use of Data," the licenses explain that certain features "may require information from your Device to provide their respective functions." *See* RJN Ex. 1 (iOS/iPad 16 Software License) at 5; Ex. 2 (watchOS) at 5. It goes on, "When you turn on or use these features, details will be provided regarding what information is sent to Apple and how the information may be used." RJN Ex. 1 (iOS/iPad OS Software License) at 4; Ex. 2 (watchOS Software License) at 4. The software licenses incorporate Apple's Privacy Policy, discussed below. *See id.*

***Privacy Policy.*** Apple's Privacy Policy discloses that Apple may collect account, device, contact, and transaction data, including "[y]our Apple ID and related account details" and "[d]ata from which your device could be identified." RJN Ex. 3 (Privacy Policy) at 3. Apple may collect "[d]ata about your activity on and use of our offerings, such as app launches within our services, including browsing history; search

---

[1] This Court previously granted Apple's Request for Judicial Notice ("RJN"), ECF No. 123, in its Order, and the grounds for considering these materials remain the same. To avoid duplicate filings, Apple refers to the previous exhibits.

history; product interaction; crash data, performance and other diagnostic data; and other usage data." *Id.* The collected data is used to "power [its] services, to process your transactions," and "for security and fraud prevention," among other uses. *Id.* at 4. "For example, if you would like to access a song through an Apple Music subscription, [Apple] collect[s] data on what songs you play in order to provide you with the content requested and for royalty purposes." *Id.* at 5.

For certain apps that collect personal data, the Privacy Policy explains that additional service-specific disclosures are presented to users in a welcome screen the first time a user opens that app and also are accessible through the app's settings and online: "[W]e provide data and privacy information embedded in our products and certain features that ask to use your personal data." *Id.* at 1. "You will be given an opportunity to review this product-specific information before using these features. You also can view this information at any time, either in settings related to those features and/or online at apple.com/legal/privacy/data." *Id.*; *see also id.* at 3 ("Descriptions of how Apple handles personal data for certain individual services are available at apple.com/legal/privacy/data.").

***Welcome Screens.*** As the Court previously observed, "when a user first opens [a] specific app," the "app provide[s] additional disclosures" (i.e., a welcome screen) with key information about the app's data collection and use practices. Order at 12. For example, the App Store welcome screen states, "Your searches, browsing, purchases, and device trust score may be used to personalize your experience, send you notifications including for Apple marketing, improve the store, and prevent fraud." *See* RJN Ex. 4 (App Store welcome screen). A hyperlink leads to a longer service-specific disclosure, which also is available online and in the device's settings. *Id.* Users must click "continue" below the privacy summary before using the app. *Id.*; *see also* RJN Exs. 5-8 (other welcome screens).

***Service-Specific Disclosures.*** When an app collects personal information, the app provides service-specific "additional disclosures about Apple's data collection" in that app." Order at 12. Those disclosures are available (1) by clicking the hyperlink on the welcome screen, and (2) on the device, by navigating to Settings > [App Name], and (3) online at https://www.apple.com/legal/privacy/data/. For example, the App Store & Privacy disclosure explains that, among other purposes, Apple "collect[s] your personal data so that we can provide you the content you purchase, download, or want to update in the App Store." RJN Ex. 9 (App Store & Privacy) at 1. It continues, "To find ways to improve the stores, we

use information about your browsing, purchases, searches, and downloads. These records may be stored with IP address, a random unique identifier (where that arises), and Apple ID when you are signed in to . . . Apple online stores." *Id.*

The other service-specific disclosures are similar. They explain, among other things, that much of the data allows the apps to function. For example, "Apple collects information about what you purchase and what you're watching in the Apple TV app . . . so [it] can display what you're watching across your supported devices." *See* RJN Ex. 11 (Apple TV App & Privacy) at 1. Music "collect[s] information about the songs and videos . . . you play or add to your music library" to customize recommendations and pay royalties. *See* RJN Ex. 10 (Apple Music & Privacy) at 3. Apple Books collects device type and the amount of free space on your device "to assess whether requested content can be downloaded." *See* RJN Ex. 12 (Apple Books & Privacy) at 2. App Store collects "the content you purchase, download, or want to update in the App Store and other Apple online stores, including iTunes Store and Apple Books." *See* RN Ex. 9 (App Store & Privacy). Stocks stores information on "active subscriptions to business content in Apple News, where available, to ensure you can access subscription content in Stocks." *See* RJN Ex. 13 (Stocks & Privacy). And Game Center, while not an app, "collects information such as the games you play and your game activity" to "track your high scores, achievements, and challenges, and to improve Game Center for you and others." Supplemental Request for Judicial Notice ("Supp. RJN") Ex. 21 (Game Center & Privacy); Ex. 22 (Game Center Developer webpage).

### B. Giving Plaintiffs the Benefit of All Reasonable Inferences, the Court Allowed Some of Their Claims To Proceed on Their "Share [Device] Analytics" Theory.

Despite finding that Apple "sufficiently disclosed the challenged data collection," Order at 20, the Court "g[ave] Plaintiffs the benefit of all reasonable inferences" and found they had "plausibly alleged they believed they withdrew consent to the contested data collection." *Id.* at 19. They purportedly did so by disabling a particular setting—"Share [Device] Analytics." *Id.*

The "Share [Device] Analytics" setting is separate from the collection described in the service-specific disclosures and allows users to choose at the operating-system level whether to share with Apple certain "Device Analytics" data. Apple discloses that Device Analytics "may include details about hardware and operating system specifications, performance statistics, and data about how you use your devices and applications." *See* RJN Ex. 14 (Device Analytics & Privacy) at 1; FAC ¶ 44. Users decide

whether to share Device Analytics data as part of the device setup process and can change that choice at any time through the Share [Device] Analytics setting on the Analytics & Improvements page, located at Settings > Privacy & Security > Analytics & Improvements. *See* FAC ¶ 111; RJN Ex. 15 (Share [Device] Analytics setting screen).

Below the setting, the following statement appears: "Help Apple improve its products and services by automatically sending daily diagnostic and usage data." *See* RJN Ex. 15 (Share [Device] Analytics setting screen); FAC ¶ 111. A hyperlink providing more information follows, and that hyperlink takes users to a Device Analytics & Privacy disclosure. The disclosure explains that Device Analytics data includes specific technical performance data. *See* RJN Ex. 14 (Device Analytics & Privacy) at 1; FAC ¶ 112. It then tells users how to view examples of Device Analytics: "You can review this information on your iOS device by going to Settings > Privacy & Security > Analytics & Improvements and tapping Analytics Data." *See* RJN Ex. 14 (Device Analytics & Privacy) at 1. The disclosure also explains that "this information is used to help Apple improve and develop its products and services." *Id.* Plaintiffs nevertheless contend that they believed the device analytics setting would turn off *all* data transmissions in the Internet-connected apps at issue. FAC ¶¶ 11-20, 43, 47-48.

The Court allowed six claims to proceed to the extent they were based on the "Share [Device] Analytics" setting: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) New York GBL section 349, (4) New York GBL section 350, (5) New Jersey Consumer Fraud Act, and (6) Illinois Consumer Fraud and Deceptive Business Practices Act. While it reserves rights to litigate defenses to those claims at a later stage, Apple does not seek to re-visit any of the Court's previous rulings.

### C. The Court Dismissed All the Privacy-Based Claims Because Plaintiffs Had Not Alleged Sufficient Facts To State a Claim.

The Court dismissed plaintiffs' California and Pennsylvania privacy-related claims on several grounds. For plaintiffs' CIPA section 632 claim, the Court found the factual allegations wanting because they lacked "detail from which the Court can conclude the alleged collection constitutes a 'communication' under CIPA." Order at 27. The Order dismissed the Pennsylvania wiretap ("WESCA") claim for similar reasons: The alleged data collection "(*e.g.*, what was tapped on, what ads were displayed, how long an app was viewed, the device screen resolution) lack[ed] requisite detail to convince the Court that it might plausibly reveal the substance of any communication." *Id.* at 28. And the Court dismissed

plaintiffs' California constitutional privacy claim because plaintiffs failed to plausibly allege "a reasonable expectation of privacy." *Id.* at 30.

In explaining its ruling, the Court recognized that "[n]o reasonable consumer would expect to engage in a transaction with Apple without *some* data being collected [by] Apple to process that transaction." *Id.* at 29-30. Indeed, the Apple apps at issue all use the Internet to power their services. *See* RJN Ex. 1 at 5. "The Internet operates on a client-server model in which client devices (such as personal computers and smartphones) request services from servers." The Editors of Encyclopaedia Britannica, How Does The Internet Work? (April 8, 2025), https://www.britannica.com/technology/How-Does-The-Internet-Work. After the device makes the request, "the server processes the request and sends the appropriate data back to the client." *Id.* Some data transmission thus must occur from an app to a server to complete an Internet request. *See also, e.g.*, *supra*, pp. 3-4 (disclosing data collection to power Apple's services).

### D. The Court Also Dismissed Plaintiffs' UCL, Implied Contract, and Unjust Enrichment Claims for Independent Reasons.

The Court also dismissed several other claims as insufficiently pleaded.

For the UCL claim, the Court concluded plaintiffs had not alleged facts showing they lost money or property, as is required to have standing under the UCL. Order at 37. In addition, plaintiffs did not plead their omission theory with the particularity required by Federal Rule of Civil Procedure 9(b). *See id.* And plaintiffs could not proceed on their "unfair" or "unlawful" theories because they had not pleaded violations of those prongs of the UCL. *See id.*

Finally, the Court dismissed plaintiffs' implied contract and unjust enrichment claims because they relied "in part on the same contractual documents underlying the breach of contract claim." *Id.* at 24. Those claims can proceed only where no express agreement exists, unless plaintiffs "plead[] facts suggesting that the contract may be unenforceable or invalid," which they failed to do. *Id.* at 23.

### E. The First Amended Complaint Attempts to Revive the Dismissed Claims and Includes a Handful of New Allegations.

The Court granted leave to amend the dismissed claims, and plaintiffs' current complaint attempts to revive the three privacy claims. FAC ¶¶ 145-166, 192-210. It also includes a new claim asserting that Apple's apps acted as unauthorized "pen register" devices. *Id.* ¶¶ 182-191. Finally, plaintiffs again bring

their UCL, implied contract, and unjust enrichment claims. *Id.* ¶¶ 127-135, 167-181, 300-305.[2]

Ten plaintiffs now remain. Of those, four add no new allegations about their app usage. *Id.* ¶¶ 15-16, 18-19.

The other six add a few examples of what they contend was collected from them while using Apple services. Some plaintiffs identify app names (e.g., "Instagram, Prime Video, Zillow, The RealReal," "Roblox; YouTube;" and "hair salon games," *id.* ¶¶ 11, 14), music (e.g., "Bob Seger Live at Cobo Hall," *id.* ¶ 17), shows (e.g., "Mandalorian," or "Ted Lasso," *id.* ¶¶ 11, 17), or stock symbols (e.g., "SRJX, VOOG and VOO," *id.* ¶ 17) they claim to have searched, including in the App Store, TV, Music, and Stocks apps. *Id.* ¶¶ 11-14, 17. Some plaintiffs claim they were directed to certain Apple apps after clicking links on third-party websites or in emails. *Id.* ¶¶ 11-13, 20 (claiming they clicked on links for, e.g., "Paired: Couples & Relationship" or "Telegram"). Plaintiffs claim to have turned off the "Share [Device] Analytics" setting but do not specify when they did so and whether it was before or after the purported collections identified above. *See id.* ¶¶ 11-20.

Plaintiffs continue to assert claims on behalf of the following putative nationwide class, as well as several state-specific subclasses and a subclass on behalf of minors, *id.* ¶ 91; *id.* ¶¶ 92–97:

> All natural persons who had details about hardware and operating system specifications, performance statistics, and data about how they used their devices and applications tracked and/or collected by Apple while using an Apple app (e.g., App Store, Apple Music, Apple TV, Books, and Stocks) on their mobile Apple device (i.e., iPhone, iPad, or Apple Watch) with the 'Share [Device] Analytics' setting turned off.

Based on the class definition, as well as the lack of any factual allegations about other apps or services, plaintiffs' claims appear to be based only on the following apps: App Store, Music, TV, Books, and Stocks. Plaintiffs include new allegations mentioning Game Center, which is a social gaming service, not an app, *id.* ¶¶ 1, 58, but none of the plaintiffs allege that they used that service. *See id.* ¶¶ 11–20.[3]

---

[2] The FAC drops several claims based on the "Allow Apps to Request to Track" setting, which the Court previously dismissed, and drops five plaintiffs whose claims were premised solely on that setting. *See* FAC ¶¶ 11-20. Plaintiffs also dropped the Illinois Consumer Fraud and Deceptive Business Practices Act claim based on the "Allow Apps to Request to Track" setting.

[3] Supp. RJN Ex. 22.

## LEGAL STANDARD

A complaint must "state[] a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), meaning the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Court may consider documents incorporated by reference or subject to judicial notice when deciding a Rule 12(b)(6) motion. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Claims that sound in fraud must satisfy Rule 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

## ARGUMENT

### I. The Complaint Does Not Plausibly Allege a California Invasion of Privacy Act Claim.

Plaintiffs assert claims under two provisions of CIPA: Section 638.51 (the pen register provision) and Section 632 (a provision barring the surreptitious recording of confidential conversations). FAC ¶¶ 158-166, 182-191. CIPA allows for civil damages in certain circumstances, *see* Cal. Penal Code § 637.2(a)(1), but is penal in nature, so its text must be construed narrowly, with "ambiguous" language "interpreted in favor of the alleged violator." *See Warden v. Kahn*, 99 Cal. App. 3d 805, 811 n.3 (Ct. App. 1979); *see also LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134-35 (9th Cir. 2009) (rule of lenity, which "requires courts to limit the reach of criminal statutes to the clear import of their text," applies to civil claim under penal statute).

Recognizing its limitations, the legislature has amended CIPA over the years to address advances in technology, including body-worn cameras, § 633.02(b) (added in 2016); distribution of confidential health care communications on the Internet, § 632.01(a)(1) (added in 2016); satellite television, § 637.5 (added in 1982); rideshare programs, § 637.6 (added in 1990); and cordless and cellular phones, § 632.7 (added in 1992). Despite multiple changes to account for other technologies, the legislature has not amended CIPA to include data collection though apps or the Internet generally.

Instead, in 2018, the legislature enacted a comprehensive privacy regulatory regime under the California Consumer Privacy Act ("CCPA") to account for the complex policy considerations surrounding data transmission on the Internet. *See* Cal. Civ. Code § 1798.100 *et seq.* The CCPA "granted consumers *new* privacy rights and imposed obligations on businesses that collect personal information about consumers." California Privacy Protection Agency – Notice of Proposed Rulemaking (Nov. 22, 2024)

https://cppa.ca.gov/regulations/pdf/ccpa_updates_cyber_risk_admt_ins_notice.pdf (emphasis added).

Plaintiffs do not and cannot allege any violation of the CCPA occurred here. Instead, they attempt to shoehorn their claims into two ill-fitting provisions of the penal code. Because plaintiffs do not adequately allege the elements of those provisions, their CIPA claims should be dismissed.

### A. The Complaint Does Not Allege the Elements of a CIPA Section 638.51 Claim for the Unlawful Use of a Pen Register.

CIPA Section 638.51 prohibits the "install[ation] or use [of] a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Penal Code § 638.51(a). The statute defines "[p]en register" as "a device or process" for recording "dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(b).

No pen register is at issue here for four reasons: (1) first-party apps are not pen registers, (2) Section 638.51 applies to telephone communications, not Internet-connected apps, (3) the pen register provision governs law enforcement, not private parties, and (4) plaintiffs claim the data transmissions constitute communications, and pen registers, by definition, cannot capture communications.

#### 1. Data Collection Within an App Does Not Involve a Separate Pen Register.

Plaintiffs' pen register claim cannot proceed for the fundamental reason that they identify no pen register. They complain of data transmission that occurs directly through Apple's own apps. *See* FAC ¶ 186. But an app that is the source of the data transmission cannot simultaneously be a pen register.

The statutory language makes this distinction clear. The statute prohibits "install[ing]" or "us[ing] a *pen register*" to capture information "transmitted by an *instrument* or *facility*." Cal. Penal Code § 638.50(b) (emphases added). The pen register must be something separate from the instrument or facility that is the source of the communication, or the legislature's decision to use separate terminology would be rendered superfluous. *See Imperial Merch. Servs., Inc. v. Hunt*, 47 Cal. 4th 381, 390 (2009) (courts "do not presume that the Legislature performs idle acts, nor do [they] construe statutory provisions so as to render them superfluous").

Other parts of the statute also would make little sense if the pen register and source of the communication could be one and the same. For example, Section 638.52 requires that a court order authorizing a pen register "shall specify . . . [t]he identity, if known, of the person . . . in whose name is

listed the telephone line to which the pen register . . . *is to be attached*" and "[t]he number and, if known, physical location of the telephone line to which the pen register . . . *is to be attached*." Cal. Penal Code § 638.52(d)(1), (3) (emphases added). A pen register cannot be attached to itself.

Interpreting the statute any other way would lead to absurd results. If read as plaintiffs would prefer, the call logs on their own cell phones could render them criminals because they have a list of other people who called them. The same would be true for any website that allows users to type a search query into a search bar and receive results, as that transmission must be logged by a server to complete the request. Indeed, it is not clear how any Internet-connected app or website could operate without a court order under plaintiffs' interpretation of Section 638.51, because the Internet Protocol requires some basic routing information to be transmitted for the Internet to work. *See supra* p. 6. "[P]ublic policy strongly disputes" an "interpretation of privacy laws" like this that would "render[] every single entity voluntarily visited by a potential plaintiff . . . as a violator." *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024); *see also Van Buren v. United States*, 593 U.S. 374, 393 (2021) (rejecting interpretation of Computer Fraud and Abuse Act that "would attach criminal penalties to a breathtaking amount of commonplace computer activity"); *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1205 (Mass. 2024) (rejecting interpretation of wiretap act that would penalize "browsing and other similar website interactions").

**2. Section 638.51 Applies to Telephone-Related Routing Information, Not Internet Data.**

Multiple courts have recognized that the text and context of Section 638.51 demonstrate it does not regulate collection of Internet data, as opposed to telephone information. *See Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (dismissing CIPA pen register claim based on alleged "software used by a website to improve its user functionality and the effectiveness of its marketing" because "plain language and legislative intent" do not extend to "internet communications"); *see also Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *2 (Cal. Super. Sept. 9, 2024) ("Section 638.50 does not address the privacy rights of Internet users."). While other early decisions reached a different conclusion, those cases cannot be squared with the text of the statute. *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

Section 638.51 requires that "a person . . . first obtain[] a court order" before "install[ing] or us[ing]

a pen register." Cal. Penal Code § 638.51(a). The court order, in turn, "*shall* specify . . . [t]he number and, if known, physical location of the *telephone line* to which the pen register . . . is to be attached." *Id.* § 638.52(d)(3) (emphases added). Plaintiffs' interpretation seeking to apply the statute to Internet-connected apps would render this requirement to identify the telephone line to which the pen register will be attached a nullity, thereby "violat[ing] the rule that '[c]ourts should give meaning to every word of a statute.'" *People v. Franco*, 6 Cal. 5th 433, 437-38 (2018); *see also People v. Blair*, 25 Cal. 3d 640, 654 n.11 (1979) (recognizing historic meaning of "pen register" to be "a mechanical device which records the numbers dialed from a telephone").

The legislative history of the pen register provision reinforces that the statute was not intended to apply to "internet communications such as websites" or apps. *Sanchez*, 2025 WL 487194, at *3. Unlike other provisions of CIPA, which were enacted in the 1960s, the legislature added the pen register provision to the penal code in 2015. Yet the statute made no mention of the Internet. The legislature instead chose to regulate data transmission on the Internet in a comprehensive civil privacy bill just a few years later. The CCPA, as later amended by the California Privacy Rights Act of 2020, provides an overarching privacy regime governing the collection, sale, and use of certain consumer information by companies operating in California. *See* Cal. Civ. Code § 1798.100 *et seq*. The 2015 pen register provision thus cannot be read as a cryptic attempt to regulate Internet data transmissions when the legislature enacted two specific laws regulating consumer privacy on the Internet just a few years later. *See Est. of Getty*, 143 Cal. App. 3d 455, 464 (1983) ("We may not substitute our view for a legislative decision which legislators have made after the weighing of the relevant policy decisions."); *see also J.M. v. Huntington Beach Union High Sch. Dist.*, 2 Cal. 5th 648, 654 (2017) ("The Legislature would not have created [] specific but superfluous provision[s].").

**3. Section 638.51 Applies to Law Enforcement, Not Private Companies.**

Plaintiffs' Section 638.51 claim suffers an additional flaw: CIPA's pen register provision applies exclusively to law enforcement, not companies like Apple. Section 638.51 prohibits the installation or use of a pen register absent a court order obtained "pursuant to Section 638.52 or 638.53." Cal. Penal Code § 638.51(a). Section 638.52 and 638.53, in turn, provide guidelines for "peace officers" seeking an order approving use of a pen register or trap and trace device. *Id.* §§ 638.52, 638.53. Read in its "context

and with a view to [its] place in the overall statutory scheme," *Yith v. Nielsen*, 881 F.3d 1155, 1165-66 (9th Cir. 2018), Section 638.51 thus applies as a constraint on law enforcement—the only entity authorized to seek an order. *See also Dep't of Corr. & Rehab. v. California State Pers. Bd.*, 147 Cal. App. 4th 797, 805 (2007) (articulating same principle of statutory interpretation under California law).

Although some courts have applied Section 638.51 to private entities, this interpretation runs contrary to the provision's text as well as its "legislative purpose . . . to authorize law enforcement to seek orders for telephone surveillance." *Casillas*, 2024 WL 4873370, at *2. The legislature enacted Section 638.51 "in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register or trap and trace device, just like its federal counterpart." *Sanchez*, 2025 WL 487194, at *3. Notably, the analogous federal provision upon which CIPA's pen register provision was modeled does not apply to private entities like Apple. *See Karriem v. Cnty. of Los Angeles*, 2020 WL 8474703, at *5 (C.D. Cal. Dec. 2, 2020) (federal pen register provision does not apply to private entities); *see also Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805, 817 (2001) (California courts give deference to interpretations of analogous federal laws). The rule of lenity likewise counsels in favor of limiting Section 638.51 to the law enforcement context, or the statute could be read to require all Internet-connected app or website owners to proactively seek a court order to operate. *See Casillas*, 2024 WL 4873370, at *4 ("The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them.").

**4. Plaintiffs' Section 638.51 Claim Contradicts Their Section 632 Theory.**

Plaintiffs' Section 638.51 claim also cannot proceed because they elsewhere contend that the data transmissions amounted to "confidential communications" under Section 632.

Section 638.50(b)'s definition of "pen register" expressly excludes devices that record "the contents of a communication." Cal. Penal Code § 638.50(b). A pen register must record only "dialing, routing, addressing, or signaling information" about the communication. *Id.* Meanwhile, Section 632 prohibits eavesdropping on or recording "confidential communication[s]," which excludes "non-content-based conduct coincident to the communication." *People v. Drennan,* 84 Cal. App. 4th 1349, 1356 (2000). Collection of the same data thus cannot simultaneously violate both Section 638.51 and Section 632.

Plaintiffs contend the alleged data transmissions do just that. Their Section 632 claim asserts that

Apple "track[ed] and record[ed]" plaintiffs' "communications." FAC ¶¶ 162-63. And their Section 638.51 claim contends that Apple apps operate as pen registers when they transmit data to Apple's servers. *Id.* ¶¶ 185-87. They do not delineate among the data fields they identify or specify which is a purported communication and which is not. *See id.* ¶¶ 55-59. Plaintiffs' new Section 638.51 claim thus should be dismissed for the additional reason that it is inconsistent with their Section 632 claim. *See Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 964 (E.D. Cal. 2023) (declining "to parse a distinction between . . . contradictory allegations or speculate as to which of them plaintiff would prefer the court to accept as true"); *see also Hoang v. ContextLogic, Inc.*, 2023 WL 6536162, at *10 (N.D. Cal. Mar. 10, 2023) (holding that "[c]ontradictory allegations . . . are inherently implausible").

### B. The Complaint Does Not Allege the Elements of a CIPA Section 632 Claim for the Unlawful Recording of a Conversation.

Plaintiffs likewise do not state a claim for violation of CIPA section 632. As before, they fail to plead that the data they allege Apple collected was "confidential" or a "communication" or that Apple has engaged in eavesdropping or recording within the meaning of CIPA section 632.[4]

#### 1. Plaintiffs Have Not Alleged That Their Data Is a "Confidential" Communication Under Section 632.

Section 632 defines "[c]onfidential communication" to exclude circumstances where the parties "may reasonably expect that the communication may be . . . recorded." Cal. Penal Code § 632(c). California courts thus generally presume that written electronic communications are not "confidential communication[s]" within the meaning of Section 632 because written communications will "by nature be recorded." *Boulton v. Community.com, Inc.*, -- F. App'x --, 2025 WL 314813, at *2 (9th Cir. 2025); *see also Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) ("California courts 'have developed a presumption that [i]nternet communications do not reasonably give rise to [an objectively reasonable] expectation' [of privacy.]"). In *Boulton*, for example, the Ninth Circuit affirmed dismissal of a Section 632 claim based on the alleged interception of text messages, reasoning that "texts are a recorded medium . . . by nature" so are "not a 'confidential communication' protected by [Section]

[4] Apple does not move to dismiss the complaint on the consent and device arguments the Court previously addressed, Order at 25, but reserves all rights to litigate those defenses at a later stage.

632 due to the statutory exception clarified in [Section] 632(c)." 2025 WL 314813, at *2.

That presumption squarely applies here. The Internet-connected apps at issue require a server transmission to deliver the results users expect to see. This is true both for searches of the kind plaintiffs allege they entered directly in Apple's apps and for the links to Apple apps plaintiffs say they clicked on via third-party sites. FAC ¶¶ 11-14, 17, 20. Indeed, the Internet operates on this "client-server model in which client devices (such as personal computers and smartphones) request services from servers." *See* https://www.britannica.com/technology/How-Does-The-Internet-Work. These device-to-server transmissions are "by their very nature recorded on the computer of at least the recipient"—here, Apple—so fall outside the definition of "confidential" communications under Section 632. *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013); *see also Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (finding it "objectively unreasonable" that consumer would not know "chat conversations with customer service agents are generally recorded").

CIPA's legislative history reinforces that it does not cover client-server Internet communications. Notwithstanding that Section 632 already existed, the legislature enacted Section 632.7 in 1992 to expand CIPA to "prohibit[] unauthorized recording of telephone conversations to cover cordless and cellular phones." *Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1076 (N.D. Cal. 2020). That means the legislature viewed Section 632 as so narrow that it did not even apply to conversations occurring via phone types other than landlines. In light of that narrow view, it makes little sense to read Section 632 even more expansively to apply to forms of automatically recorded Internet transmissions. *See Huntington Beach*, 2 Cal. 5th at 654 ("The Legislature would not have created [] specific but superfluous provision[s].").

This does not mean recorded electronic transmissions lack protection in California; to the contrary, they are the subject of extensive regulation, including through the CCPA. But they do not fall within the ambit of Section 632, which is "a statute designed to combat illicit recording of telephonic communications." *See Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018).

### 2. Plaintiffs Have Failed To Show That the Alleged Data Collection Involved "Communications" Under Section 632.

As this Court previously recognized, "it strains credulity to interpret 'communication' for purposes of CIPA to include at least some of the data collection Plaintiffs complain of here." Order at 26. Plaintiffs

still have not adequately alleged the data at issue amounts to an actionable "communication" under CIPA.

While CIPA does not define "communication," both Black's Law Dictionary and the California Court of Appeal stress the requirement for an exchange of ideas. Black's defines "communication" as "[t]he interchange of messages or ideas by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception." COMMUNICATION, Black's Law Dictionary (11th ed. 2019). The California Court of Appeal has emphasized that CIPA protects against "an intrusion on one's thoughts, ideas, or knowledge." *Drennan*, 84 Cal. App. 4th at 1358 (still photographs do not violate CIPA because they do not record a "communication"). Accordingly, "non-content-based conduct coincident to the communication" is not confidential and falls outside the scope of Section 632. *Id.* at 1356; *see also Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 607 (2020), *as modified on denial of reh'g* (Oct. 23, 2020) ("[T]he term 'communication' for purposes of CIPA connotes a singular conversation or exchange shared between two or more participants.").

Plaintiffs' amendments, FAC ¶¶ 11-14, 17, 20, do not demonstrate that Apple collected any actionable communications for three reasons.

*First*, four plaintiffs do not allege any new facts about their app usage, *id.* ¶¶ 15-16, 18-19, so their claims should be dismissed for the same reasons stated in the Court's previous order. *See* Order at 26-27.

*Second*, the other six plaintiffs recite app names, stock symbols, etc. they purportedly searched, but do not allege when they did so. Accordingly, they have not established they performed these actions *after* purportedly withdrawing their consent by turning off the "Share [Device] Analytics" setting. FAC ¶¶ 11-14, 17; *see also id.* ¶¶ 12, 20. They are not actionable communications under CIPA for that reason. *See* Cal. Penal Code § 632; Order at 15, 19-20 (recognizing consent defense).

*Third*, searching for or accessing specific app names, stock symbols, or book titles does not amount to a "communication" under CIPA. "Communication" as used in CIPA "'connotes a singular conversation or exchange shared between two or more participants.'" Order at 26 (quoting *Gruber*, 55 Cal. App. 5th at 607). Tapping or searching within an app or website does not suffice. *See Vita*, 243 N.E.3d at 1199 ("[b]rowsing and accessing the information published on a website is significantly different from having a conversation or sending a message to another person" and does not fall within the plain meaning of a "communication"); *see also* Order at 26 (finding allegations that Apple recorded what users "tapped on"

and apps they "'searched' for" insufficient to establish a "communication").

As this Court previously held, plaintiffs' allegations about the general data Apple purportedly collects when people use its apps, such as "Device identifier," "Event start timestamp," "Age bucket," "Apple ID Number," "Hardware model," "IP city," and "OS version," FAC ¶¶ 55-59, also do not describe "communications." Order at 26. These are all "routine identifiers" and not "communications." *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (collecting cases); *see also I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("[T]he Court is hard pressed to conclude that basic contact information, including one's email address, phone number, or Facebook or Zynga username, is private information."); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (dismissing Section 632 claim alleging collection of browsing data and unique user identifiers because such data is not sufficiently personal or private). The Court should dismiss plaintiffs' CIPA section 632 claim once more for failure to show that this data constitutes a "communication."

**3. Plaintiffs Do Not Allege Eavesdropping or Recording Under CIPA.**

Section 632 also requires "eavesdrop[ping] upon or record[ing]" the confidential communication, neither of which applies here. Cal. Penal Code § 632(a).

"California courts interpret 'eavesdrop,' as used in section 632, to refer to a third party secretly listening to a conversation between two other parties." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). Where, as here, "there is no unknown third party," there can be no eavesdropping. *Lau v. Gen Digital Inc.*, 2024 WL 1880161, at *2 (N.D. Cal. Apr. 3, 2024) (dismissing CIPA claim where plaintiffs "install[ed] [defendant's software] with the expectation that [defendant] would have access to the plaintiffs' browsing activity to provide a more secure browsing experience").

Receipt of data on a server to be able to display the results of plaintiffs' search for an app title, book, or stock also is not akin to secretly "recording" a confidential conversation for later playback. Rather, a "recording" within the meaning of CIPA can occur only for communications, like phone conversations, that are not "by their very nature recorded on the computer of at least the recipient." *Gmail Litig.*, 2013 WL 5423918, at *23. A more expansive interpretation of "recording" would criminalize the everyday occurrence of an intended email recipient saving that email for later reference. That is not the law. *See id.* (dismissing Section 632 claim and observing that "[u]nlike phone conversations, email services are by their very nature recorded on the computer of at least the recipient, who may then easily

transmit the communication to anyone else"); *see also TBG Ins. Servs. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 452 n.8 (2002) ("any reasonably intelligent person 'savvy enough' to use the Internet is aware that messages are received in a recorded format").

* * *

Plaintiffs' failure to plead multiple elements of either CIPA claim—or to remedy the issues this Court identified in its prior ruling—underscores the gulf between CIPA's language and plaintiffs' factual allegations. Allowing plaintiffs to proceed based on routine transmissions of data to facilitate Internet-enabled searches and display those results would expand CIPA far beyond its text, and their CIPA claims should therefore be dismissed.

## II. The Complaint Does Not Allege the Elements of a Pennsylvania WESCA Claim.

Pennsylvania's WESCA "operates in conjunction with and as a supplement to the Federal Wiretap Act." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125-26 (3d Cir. 2022). As relevant here, it prohibits the intentional interception of the contents of any electronic communication. 18 Pa. C.S. § 5703. Plaintiffs still fail to allege any of the elements of an unlawful interception under WESCA.

*First*, plaintiffs have not pleaded, as they must, that Apple obtained the "contents" of any "communication." This Court dismissed plaintiffs' prior WESCA claim for this reason, Order at 28-29, and the FAC exhibits the same flaws. WESCA defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 Pa. C.S. § 5702. This definition is identical to the Federal Wiretap Act's definition of "contents," and identical terms in the two statutes are "interpreted in the same way." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 n.6 (3d Cir. 2003). Under the federal statute, courts have recognized that the term "contents" does not include "record information," *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014), such as "addresses, phone numbers, and URLs" when performing a "dialing, routing, addressing or signaling function," *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 137 (3d Cir. 2015).

As this Court found for the prior complaint, "Plaintiffs' allegations . . . lack sufficient detail to infer that the information collected amount[s] to more than just 'record' data." Order at 28. They assert that Apple collects, among other things, "Apple ID number," "Device keyboard language," "Operating system," and "Device identifier," FAC ¶¶ 55-59. This information plainly does not constitute "the

substance, purport, or meaning" of communications; rather, it is "record information" describing how users interact with apps. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 68, 70 (W.D. Pa. 2023) (finding that allegations that plaintiff's "mouse movements and clicks, keystrokes, and URLs of web pages visited" did not constitute the "'content' of 'communications'"); *Zynga*, 750 F.3d at 1106-07 ("referer header information," including "user's Facebook ID and the address of the webpage from which the user's HTTP request to view another webpage was sent," did not "meet the definition of 'contents'"); *see also S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *6-7 (N.D. Cal. May 15, 2019) (under the Federal Wiretap Act, "the origin of a phone call, a phone call's length, and geolocation data from an app," as well as the "date and time of usage data" collected are not "content," but "record information"); *Yoon*, 549 F. Supp. 3d at 1082-83 (clicks, pages visited, keystrokes, and PII, including shipping and billing information, are not "contents" under California's analogous wiretap statute).

The sole Pennsylvania plaintiff (Plaintiff Sgro), *see* FAC ¶¶ 94, 193-94, does not add any allegations that lead to a different result. He claims he searched for Zoom, Brave Browser, Instagram, and pdf scanner in the App Store and that he accessed the Telegram app from Telegram's own website. *Id.* ¶ 13. He does not explain whether he did any of this before or after turning off the "Share [Device] Analytics" setting, which alone defeats his claim. *See* Order at 20. Moreover, perfunctory searches to obtain videoconference, social media, and other utility apps do not convey the content of any communication. *See Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *13 (E.D. Pa. Nov. 25, 2024) (websites of "retailer[s] . . . called Lamin-x and Defendant Vivint" did not count as content for purposes of WESCA); *see also Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 815 (E.D. Pa. 2025) (no standing for WESCA claim based on drink flavor searches such as "ice pop" and "meta moon").

*Second*, plaintiffs fail again to allege collection by a "device" as defined in WESCA. *See Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007). A "device" under WESCA means "[a]ny device or apparatus . . . that can be used to intercept a wire, electronic or oral communication." 18 Pa. C.S. § 5702. However, the device performing the interception must be separate from the source of the communication. *See Commonwealth v. Diego*, 119 A.3d 370, 374 (Pa. Super. 2015) (iPad from which the intercepted communication originated was not the relevant device). Here, plaintiffs contend that their mobile devices are the intercepting devices. *See* FAC ¶ 202. But the

mobile devices cannot be both the sources of the alleged communications and the device that allegedly intercepted them. That is fatal to plaintiffs' WESCA claims. *See Diego*, 119 A.3d at 374.

*Third*, the WESCA claim cannot proceed because Apple was the direct recipient of any communication. In a decision affirmed by the Pennsylvania Supreme Court, the *Proetto* court held that where "a party receives information from a communication as a result of being a direct party to the communication, there is no interception." *See Commonwealth v. Proetto*, 771 A.2d 823, 831 (Pa. Super. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003).

Plaintiffs' citation to the Third Circuit decision in *Popa*, 52 F.4th at 124, FAC ¶ 203, should not change the result. That decision is not binding on this court, *see Rivera v. Invitation Homes, Inc.*, 2019 WL 11863726, at *2 (N.D. Cal. June 19, 2019), and its holding diverges from the Pennsylvania state court decisions that have consistently recognized the direct-party exception. *See Commonwealth v. Cruttenden*, 58 A.3d 95, 98-100 (Pa. 2012); *Proetto*, 771 A.2d at 831; *Diego*, 119 A.3d at 380-81. Moreover, *Popa* does not apply on its facts. There, the court stated that the plaintiff "obviously knew" her browser was communicating with the website she was viewing (operated by the defendant) but did not know that her browser was also communicating with a third-party marketing company. *Popa*, 52 F.4th at 124. Here, as with the defendant website operator in *Popa*, plaintiffs obviously knew they were interacting with Apple when using "Apps owned by Apple" and "search[ing] for" certain items in those apps. FAC ¶¶ 11-20. And, unlike in *Popa*, plaintiffs do not (and cannot) allege the presence of any unknown third-party. Under these facts, *Popa* does not apply.[5]

## III. Apple Did Not Invade Plaintiffs' Privacy Rights Under the California Constitution.

Apple believes that privacy is a fundamental human right and designs its products and services with privacy in mind. However, the allegations plaintiffs advance here do not support their claims for violations of the California constitutional privacy right, which "sets a 'high bar' for establishing" a claim. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). Plaintiffs must plead (1) a reasonable

---

[5] The district court in *Popa* recently granted summary judgment for the defendant, finding that the plaintiff had "constructively consented to" the alleged interception. *Popa v. Harriet Carter Gifts, Inc.*, 2025 WL 896938, at *11 (W.D. Pa. Mar. 24, 2025).

expectation of privacy in the circumstances; (2) a legally protected privacy interest; and (3) a serious invasion of privacy constituting "an egregious breach of . . . social norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 35-37 (1994). The complaint's sparse allegations do not satisfy these elements.

**A. Plaintiffs Do Not Plead a Reasonable Expectation of Privacy Under the Circumstances at Issue.**

The amended complaint does not remedy the flaw that previously led to dismissal—plaintiffs' failure "to sufficiently plead that they had any reasonable expectation of privacy" under the circumstances. Order at 30. In *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008), for example, the Ninth Circuit held that Internet users do not have a reasonable expectation of privacy in the to/from addresses of emails or the IP addresses of websites visited. That is "because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." *Id.* at 510; *see also Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189-90 (N.D. Cal. 2020) (same); *Gmail Litig.*, 2013 WL 5423918, at *23 (expectation of privacy in emails inadequately alleged because emails "are by their very nature recorded on the computer of at least the recipient").

The same is true here. As the Court recognized previously, Order at 29, reasonable consumers understand that when they buy a book in the Books app, for example, Apple must record the purchase to process the transaction and make the book available on the device. Indeed, "[n]o reasonable consumer would expect to engage in a transaction with Apple without *some* data being collected . . . to process that transaction." *Id.* at 29-30. The Court therefore dismissed plaintiffs' claims as "fall[ing] short" of the case law, "particularly because Plaintiffs allege Apple collected data from Plaintiffs' interactions with *Apple's own apps*." *Id.* at 30.

Plaintiffs' new allegations are not different in kind. Consumers reasonably understand that when they search for apps, music, stocks, or books within Apple apps, or click a link to an Apple app on a third-party website, a transmission to Apple servers must occur to display the requested results. That's how the Internet works. *See* https://www.britannica.com/technology/How-Does-The-Internet-Work. Presumably plaintiffs did not expect to see a blank page when they typed an app name into the search bar of the App Store, so they cannot now claim to have a reasonable expectation of privacy in data transmissions to facilitate that search. Plaintiffs identify nothing else new in their amended complaint, so the Court should dismiss the constitutional privacy claim once again.

**B. The Sparse Allegations Do Not Identify a Legally Protected Privacy Interest.**

California law recognizes two types of protected privacy interests: (1) informational privacy, i.e., the interest in "precluding the dissemination or misuse of sensitive and confidential information," and (2) autonomy privacy, i.e., the interest in "making intimate personal decisions or conducting personal activities without observation, intrusion, or interference." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 196-97 (N.D. Cal. 2019). The complaint's limited facts do not satisfy either.

Plaintiffs' minimal additional allegations do not cure their previous failure to plead an informational privacy interest. *See* FAC ¶¶ 11-14, 17, 55-59; *supra* Section I. Four plaintiffs allege no details whatsoever about how they used the apps, so their claims should be dismissed again.

The others' allegations all continue to relate to Apple's own services, which undercuts an informational privacy interest. *Google Location Hist.*, 428. F. Supp. 3d at 198. These plaintiffs claim they searched for or opened particular apps or categories of apps, TV shows, books, or music, including, for example, "Instagram, Prime Video, Zillow, and The RealReal," "Mandalorian," "food-based games and hair salon games," "Telehealth by Simple Practice," "Ted Lasso," "COOP ATM Shared Branch Locator," "Bob Seger Live at Cobo Hall," and "SENSORY: Life on the Spectrum." FAC ¶¶ 11-20. Plaintiffs do not explain how they thought the results of their searches or clicks on links to apps in the App Store would be returned to them without a transmission of the request to an Apple server. *See Yoon*, 549 F. Supp. 3d at 1086 (no informational privacy interest in user activity on company's own website); *Google Location Hist.*, 428. F. Supp. 3d at 198 (informational privacy theory "undercut by the admission that Defendant only tracked and collected data during use of [its] services").

Nor do they explain how these transmissions reflect "sensitive and confidential information." *See Google Location Hist.*, 428 F. Supp. 3d at 196-99. They do not claim to have suffered "unjustified embarrassment or indignity" by an app returning the search results to them for widely used apps and popular music. *Hill*, 7 Cal. 4th at 35. Accordingly, they cannot show an informational privacy interest in the alleged data transmissions from Apple's own services. *See id.*; *see also Yahoo Mail*, 7 F. Supp. 3d at 1041 (no informational privacy interest in emails, where plaintiffs failed to specify anything "confidential" or "sensitive" in the emails).

Autonomy privacy also is not at issue here. As this Court recognized in *Google Location History*,

"California courts have discussed autonomy privacy in cases 'alleging *bodily* autonomy.'" 428 F. Supp. 3d at 198 (collecting cases). Here, however, plaintiffs do not identify anything about the information purportedly collected about them that would implicate their bodily autonomy or provide grounds for extending the right more broadly. *See id.*; *see also Yoon*, 549 F. Supp. 3d at 1086 (agreeing with *Google Location History*'s refusal to extend autonomy privacy beyond bodily autonomy).

**C. No "Egregious Breach" of Social Norms Has Been Pleaded.**

The privacy claim also fails to state the third element: that the collection is "so serious in 'nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.'" *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009); Order at 30 n.4. Courts regularly dismiss claims under this element where the plaintiffs do not plead facts showing that the data collected from them was sensitive.

For example, in *Mastel v. Miniclip SA*, the plaintiff alleged that an app secretly accessed the iPhone's Pasteboard, which allows users to copy text between apps. 549 F. Supp. 3d 1129, 1132-33 (E.D. Cal. 2021). The Pasteboard purportedly may have contained "his contact information, addresses for his friends and relatives, or text from messages that he had sent." *Id.* at 1142. The court refused to find an egregious breach of social norms because plaintiff identified no sensitive information in his Pasteboard. *See id.* at 1141-42; *see also Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019) (conclusory allegation that defendant accessed "private" location data insufficient). Similarly, in *Hammerling v. Google LLC*, the plaintiff claimed that Google could have discerned plaintiff's bank, type of car, and interest in religion, among other things. 2022 WL 17365255, at *1 (N.D. Cal. Dec. 1, 2022). But the court held that plaintiff's actual searches for "a foot massager, slippers, meal subscriptions, coconut oil, and use of a photo editor" were "'routine commercial behavior,' not considered a highly offensive intrusion of privacy." *Id.* at *8-9.

Plaintiffs' limited allegations about certain terms they claim they searched in Apple's apps likewise do not show an egregious breach of social norms. FAC ¶¶ 11-20. Different plaintiffs claim to have searched for or accessed through the App Store, for example, "games, AI tools for professional writing, crypto market trackers, video converters, and password finders," "IHG+Bonvoy; roommate; target; BART; apartment; HBO; Muni; Firefox; LSAT," "Sutter Health My Health," "TouchBanking," and other apps. *Id.* ¶¶ 11-12. Others claim to have searched Apple Music for "various artists" and "Bob

Seger Live at Cobo Hall." *Id.* ¶¶ 11, 17. Some say they searched TV for "various shows or movies including Ted Lasso" and "Mandalorian." *Id.* One says she opened "SENSORY: Life on the Spectrum" in Apple Books. *Id.* ¶ 12. Two say they searched the Stocks app for symbols that include "SRJX, VOOG, and VOO." *Id.* This type of "routine commercial behavior" does not amount to "an egregious breach of social norms." *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 951 (S.D. Cal. 2024); *see also Hammerling*, 2022 WL 17365255, at *9 ("collect[ing] . . . five pieces of de-anonymized disparate information" not "highly offensive"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosing LinkedIn history not an egregious breach); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011) (collecting "plaintiff's address . . . and using it to mail him coupons and other advertisements" not an "egregious breach").

Plaintiffs' list of general categories of information they claim were collected, FAC ¶¶ 55-59, also does not state a claim. Courts have refused to find an egregious breach of social norms based on collection, and in some cases even disclosure, of similar categories of information. *See McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *1, *7-8 (N.D. Cal. Feb. 2, 2021) (rejecting invasion of privacy claim based on alleged monitoring of "when and how often . . . non-Google apps are used and the amount of time a user spends on . . . non-Google apps"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1050 (N.D. Cal. 2012) (rejecting invasion of privacy claim based on alleged collection by third-party apps of "Plaintiffs' addresses and current whereabouts; the unique device identifier ('UDID') assigned to the iDevice; the user's gender, age, zip code and time zone; and app-specific information such as which functions Plaintiff performed on the app"); *Morilha v. Alphabet Inc.*, 2024 WL 5205542, at *4 (N.D. Cal. Dec. 23, 2024) (same for "disclosure of IP addresses and geolocation data").

## IV. The UCL Claim Fails for Several Reasons.

This Court previously dismissed plaintiffs' UCL claim for three reasons: plaintiffs failed to allege (1) economic injury, (2) an omission with the particularity required by Rule 9(b), and (3) a violation of the "unfair" or "unlawful" prongs. Plaintiffs have not cured these deficiencies.[6]

[6] The Court's previous Order granted Apple's motion to dismiss the UCL and consumer protection claims (continued…)

**A. Plaintiffs Fail To Allege Lost Money or Property.**

As this Court has recognized, plaintiffs must allege they lost money or property as a result of the purported violation to have statutory standing for a UCL claim. *See* Order at 35-36; Cal. Bus. & Prof. Code § 17204. This Court rejected plaintiffs' previous allegations as "insufficient" because they claimed only that their data is valuable in the abstract but did not identify any lost money or property. Order at 36.

Plaintiffs have not added any new allegations supporting their own loss of value in their data, nor have they advanced any other new theory of loss. They again make the conclusory assertion that their data "has substantial economic value." *Compare* FAC ¶ 70, *with id.* ¶¶ 74–82. And they again claim that "a number of platforms have appeared where consumers can and do directly monetize their own data." *Id.* ¶ 83. But they do not allege they attempted to sell their data to these platforms, nor that anything Apple did prevented them from making a sale. For that reason, and the additional reasons identified in the Court's previous order, plaintiffs' UCL claim should be dismissed again. *See* Order at 35-37; *see also Gerritsen v. FCA US LLC*, 2020 WL 3841304, at *1 (C.D. Cal. Mar. 3, 2020) (dismissing UCL claim when plaintiffs made only "conclusory allegations" that "they suffered an 'ascertainable loss'" because of "overpayment and diminished value of the Vehicle").

**B. Plaintiffs' Omission Theory Does Not Satisfy Rule 9(b).**

Federal Rule of Civil Procedure 9(b) requires plaintiffs to allege with particularity that, had Apple made specific disclosures, plaintiffs would have been aware of them and not purchased their devices. *See Tabak v. Apple, Inc.*, 2020 WL 9066153, at *9 (N.D. Cal. Jan. 30, 2020). Plaintiffs' UCL claim based on an omission theory previously fell short because they made "only conclusory allegations they 'would not have purchased their devices from [Apple] or would have paid less for them.'" Order at 33.

That defect remains because plaintiffs failed to present additional allegations in support of this claim. The complaint contains nothing more than "conclusory statements that would suggest that disclosure of the data collection would have played a role in plaintiffs' decision to purchase the devices at issue." *Id.* at 34. These claims should be dismissed for the same reasons they were before.

---

based on misrepresentation claims for advertisements identified in the complaint. *See* Order at 31-33. The FAC adds no new allegations on those issues, so the Court should therefore reach the same result.

### C. Plaintiffs Do Not Satisfy the "Unfair" or "Unlawful" Prongs.

In the FAC, plaintiffs still have not identified "a specific constitutional, statutory, or regulatory provision to which their claim is tethered." Order at 34. Thus, they cannot state a claim under the unfair prong. *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010).

Nor can plaintiffs state a claim under the unlawful prong because their CIPA, WESCA, and constitutional claims fail for the reasons explained above. Beyond that, plaintiffs make only passing reference to the Children's Online Privacy Protection Act, 18 U.S.C. § 2510, and merely listing laws, without alleging facts showing how a defendant violated them, does not state an "unlawful" claim. *See* Order at 34; s*ee also Fisher v. Nationstar Mortg. LLC*, 2018 WL 1933300, at *5 (N.D. Cal. Apr. 24, 2018) ("Merely reciting statutes is insufficient" to state UCL claim).

For the foregoing reasons, plaintiffs' UCL claim should again be dismissed.

## V. The Implied Contract and Unjust Enrichment Claims Remain Deficient.

As the Court explained, "there cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Randall v. Univ. of the Pac.*, 2022 WL 1720085, at *4 (N.D. Cal. May 28, 2022). For that reason, this Court previously dismissed plaintiffs' implied contract and unjust enrichment claims because they relied "on the same contractual documents underlying the breach of contract claim." Order at 24. Plaintiffs have not added any factual allegations to remedy that deficiency, so these claims again should be dismissed. *See* FAC ¶¶ 11-20, 127-135.

## VI. The Allegations Concerning Game Center Should Be Dismissed.

The FAC includes some allegations regarding Game Center and general types of data Game Center purportedly collects. FAC ¶¶ 1, 58. Contrary to plaintiffs' claims, Game Center is not an app, RJN Ex. 22, and none of the plaintiffs allege they used Game Center. *See* FAC ¶¶ 11-20. Thus, to the extent plaintiffs seek to base any claims on Game Center, those claims should be dismissed.

## CONCLUSION

For the reasons stated, plaintiffs' CIPA, WESCA, invasion of privacy, UCL, and implied contract claims should be dismissed with prejudice. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010) (affirming denial of leave to amend because "there was no need to prolong the litigation by permitting further amendment" where amendment would be futile).

Dated: May 29, 2025

Respectfully submitted,

*/s/ Kathryn E. Cahoy*

Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-7030
Facsimile: (415) 955-6530
Email: aheath@cov.com

*Attorneys for Defendant Apple Inc.*