**LYNCH CARPENTER, LLP**
(Eddie) Jae K. Kim (SBN 236805)
ekim@lcllp.com
Tiffine E. Malamphy (SBN 312239)
tiffine@lcllp.com
117 East Colorado Blvd., Suite 600
Pasadena, CA 91105
Telephone: (626) 550-1250
Facsimile: (619) 756-6991

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

*Co-Lead Interim Class Counsel*

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

IN RE: APPLE DATA PRIVACY LITIGATION

Civil Case No.: 5:22-cv-07069-EJD

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CONOSLIDATED COMPLAINT**

Date: August 28, 2025
Time: 9:00 a.m.
Location: Courtroom 4 – 5th Floor
District Judge: Hon. Edward J. Davila

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

A. The Court's Motion to Dismiss Order Allowed Claims Based on the "Share [Device] Analytics" Setting to Proceed. ..... 2

B. Plaintiffs Amended the Consolidated Class Action Complaint to Address the Court's Concerns and Add New Allegations. ..... 4

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

C. Plaintiffs Sufficiently Alleged Apple Unlawfully Recorded Their Confidential Communications in Violation of CIPA Section 632 ..... 5

i. Plaintiffs Sufficiently Alleged Their Usage Data is Confidential. ..... 5

ii. CIPA Covers Client-Server Internet Communications. ..... 7

iii. Plaintiffs' Data Collected by Apple Qualify as Communications Under CIPA. ..... 7

iv. Apple's Recording of Plaintiffs' Confidential Communications Justify a Claim Under CIPA. ..... 8

D. Plaintiffs Sufficiently Alleged Apple Unlawfully Used a Pen Register in Violation of CIPA Section 638.51 ..... 9

i. Plaintiffs Sufficiently Alleged That Processes Within Apple's Apps Constitute Pen Registers. ..... 9

ii. CIPA Section 638.51 Applies to the Internet. ..... 11

iii. CIPA Section 638.51 Applies to Private Companies. ..... 11

iv. Plaintiffs' Claims are Not Contradictory (Although it Would Not Matter if They Were). 13

E. Plaintiff Sgro Properly Alleges Each Element of a WESCA Claim. ..... 14

i. Plaintiff Sgro Properly Alleges Apple Collected the Contents of Communications ......... 14

ii. Apple Fails to Argue That Its Apps Are Not Devices. .................................................... 14

iii. Plaintiff Sgro's Claim Can Proceed Even Though Apple Was the Direct Recipient of Data. ........................................................................................................................... 15

F. Plaintiffs State a Claim for Invasion of Privacy. ............................................................... 16

i. Plaintiffs Have a Reasonable Expectation of Privacy...................................................... 16

ii. Plaintiffs Have a Legally Protected Privacy Interest. ...................................................... 17

iii. Apple Committed a Serious Invasion of Privacy......................................................... 18

G. Plaintiffs' UCL Claim is Well-Pleaded. ............................................................................ 19

i. Plaintiffs Sufficiently Alleged Apple's Violations of the UCL........................................ 19

ii. Plaintiffs Sufficiently Alleged Damages Under the UCL................................................ 20

H. Plaintiffs' Alternative Claims were Adequately Pled......................................................... 20

I. Game Center ......................................................................................................................... 21

V. CONCLUSION...................................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*9201 San Leandro LLC v. Precision Castparts Corp.*, 548 F. Supp. 2d 732 (N.D. Cal. 2008) ..... 5
*Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541 (9th Cir. 1996) ..... 12
*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ..... 19, 20
*Brown v. Google3 LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..... 6, 16, 18
*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 8
*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 20
*Cheneau v. Garland*, 997 F.3d 916 (9th Cir. 2021) ..... 12
*Commonwealth v. Cruttenden*, 58 A.3d 95 (Pa. 2012) ..... 15
*Commonwealth v. Proetto*, 771 A.2d 823 (Pa. Super. 2001) ..... 15
*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ..... 5
*Crittenden v. Apple, Inc.*, 2023 WL 6149895 (N.D. Cal. Sept. 19, 2023) ..... 21
*Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813 (N.D. Cal. 2023) ..... 20
*Doe v. United States*, 58 F.3d 494 (9th Cir.1995) ..... 21
*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) ..... 5
*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012) ..... 20
*Greenley v. Kochava*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..... 9, 12
*Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591 (2020) ..... 7, 8
*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994) ..... 16
*In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) ..... 19
*In re Facebook, Inc., Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) ..... 6, Passim
*In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945 (N.D. Cal. 2021) ..... 5
*In re Google Inc. Cookie Placement Consumer Privacy Litigation,*, 806 F.3d 125 (3d Cir. 2015) ..... 17

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ..... 18
*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..... 6, 7
*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) ..... 20
*In re Nickelodeon Cons. Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ..... 17
*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..... 17
*James v. Walt Disney Company*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ..... 14
*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ..... 11
*Lesh v. Cable News Network Inc.*,
2025 WL 563358 (S.D. NY 2025) ..... 11
*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ..... 21
*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ..... 19
*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ..... 7, 11
*Moody v. C2 Educational Systems Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ..... 11, 12
*Oliver v. Noom, Inc.*,
2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) ..... 15
*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..... 19
*Opperman v. Path, Inc.*,
205 F. Supp. 3d (N.D. Cal. 2016) ..... 19
*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) ..... 6
*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ..... 15
*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..... 19
*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ..... 17, 19
*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ..... 7, Passim
*Shruhan v. Apple Inc.*,
2023 WL 6391497 (N.D. Cal. Sept. 29, 2023) ..... 21
*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ..... 13
*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ..... 6, 11
*Smith, et al., v. Santa Cruz County, et al.*,
2023 WL 8360054 (N.D. Cal. Dec. 1, 2023) ..... 21

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 12
*Weston v. Perez*,
2017 WL 4541732 (S.D. Cal. Oct. 11, 2017) .......... 6
*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 7
*Williamson v. McAfee, Inc.*,
2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) .......... 19
*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 15

**Statutes**

18 Pa. C.S. § 5702 .......... 14, 15
Cal. Civ. Code § 1798.175 .......... 7, 11
Cal. Penal Code § 638.50(b) .......... 9
Cal. Penal Code § 638.51 .......... 5, Passim
New York General Business Law ("GBL") § 349 .......... 2, 3

**Rules**

Fed. R. Civ. Proc. 8(d)(3) .......... 13
Fed. R. Civ. Proc. 12(b)(6) .......... 5

Plaintiffs Bruce Puleo, Carlina Green, David Sgro, A.H. (a minor), Dottie Nikolich, Elena Nacarino, Francis Barrott, Katie Alvarez, E.M. (a minor), and Quincy Venter ("Plaintiffs"), by and through their undersigned counsel, hereby respectfully submit this brief in opposition to Defendant Apple, Inc.'s ("Defendant" or "Apple") Motion to Dismiss First Amended Consolidated Complaint (ECF No. 150, "MTD").

## I. INTRODUCTION

Plaintiffs bring this class action against Apple for the improper collection and use of Apple mobile device users' data. ECF No. 148 ("FAC"), at ¶¶ 1-6. Apple tracks and collects substantial amounts of personal information from consumers when they use Apple's proprietary applications ("Apps")—including, but not limited to, the App Store, Apple Music, Apple TV, Books, and Stocks—on their mobile Apple devices (i.e., iPhone, iPad, or Apple Watch). *Id.* This usage data can include intimate details about users' lives, interests, communications, personal information, device metadata, as well as "data about your activity on and use of our offerings, such as app launches within our services, including browsing history; search history; product interaction; crash data; performance and other diagnostic data; and other usage data." *Id.*, at ¶¶ 11-20, 41, 48-61. Apple offers the option for users to withdraw consent for Apple to collect, store, or use their usage data by disabling the "Share [Device] Analytics" setting on the device. *Id.*, at ¶¶ 39-47. However, Apple disregarded Plaintiffs' withdrawal of consent and continued collecting, storing, and using Plaintiffs' usage data even after they had withdrawn consent for Apple to do so, in direct contradiction of Apple's privacy policy and prior commitments. *Id.*

Plaintiffs were injured by Apple's conduct. *Id.*, at ¶¶ 115, 126, 135, 144, 157, 166, 179, 191, 210, 231, 254, 270, 296, 303. Plaintiffs are Apple mobile device users who sought to exercise control over their usage data by disabling the "Share [Device] Analytics" setting, meaning they did not consent to Apple tracking their confidential communications or other usage data. *Id.* Plaintiffs allege that Apple's conduct has harmed Plaintiffs and the Class by capturing a large amount of personally identifying information including intimate personal facts and sensitive usage data. *Id.*, at ¶¶ 11-20, 48-61. Plaintiffs further allege that, given the monetary value of individual personal information, Apple deprived Plaintiffs and the Class of the economic value of their interactions with Apple's Apps

without providing proper consideration, and overcharged Plaintiffs and the Class for their mobile devices based on Apple's privacy commitments. *See id.*, at ¶¶ 62-90, 115, 126, 135, 144, 157, 166, 179, 191, 210, 231, 254, 270, 296, 303.

In light of these well-pled allegations, Apple's motion to dismiss should be denied.

## II. STATEMENT OF FACTS

### A. The Court's Motion to Dismiss Order Allowed Claims Based on the "Share [Device] Analytics" Setting to Proceed.

In September 2024, after briefing and oral argument, this Court entered an order on Defendant's motion to dismiss the Consolidated Class Action Complaint (ECF No. 138, "Order"). *See* Order. The Court denied Defendant's motion as to Plaintiffs' claims based on the "Share [Device] Analytics" setting for (1) breach of express contract, (2) breach of implied covenant of good faith and fair dealing; (3) violation of New York General Business Law ("GBL") § 349; (4) violation of GBL § 350; (5) violation of New Jersey's Consumer Fraud Act; (6) violation of Illinois's Consumer Fraud and Deceptive Business Practices Act ("ICFDA"); and (7) unjust enrichment. Order, at 38-39. Despite stating that it does not seek to re-visit the Court's prior ruling, Defendant is challenging the Court's denial of its first motion to dismiss as to Plaintiffs' unjust enrichment claim. MTD, at 5, 25.

In support of its ruling, the Court found that Plaintiffs' "allegations plausibly articulate an Article III injury because they claim violation of a substantive privacy right." Order, at 10. The Court further found that "Plaintiffs have plausibly alleged they believed they withdrew consent to the contested data collection by disabling the 'Share [Device] Analytics' setting." *Id.*, at 19. The Court also found that Plaintiffs properly alleged a breach of contract based on Apple "promising that disabling the setting would prevent Apple from 'sending daily diagnostics and usage data,' but collecting the usage data nevertheless." *Id.*, at 22. Plaintiffs' damages allegations – the loss of the value of their data and the premium they paid for Apple mobile devices – were sufficient, according to this Court, to support their breach of contract claim. *Id.*, at 23. Further, "[j]ust as Plaintiffs have stated a claim for breach of contract with respect to the Apple's alleged failure to respect Plaintiffs' withdrawal of consent through the 'Share [Device] Analytics' setting, Plaintiffs have stated a claim for breach of the implied covenant of good faith and fair dealing for that conduct." *Id.*, at 24. The Court found that Plaintiffs sufficiently pled a misrepresentation and reliance on Apple's

misrepresentation. *Id.*, at 31. Finally, the Court found that Plaintiffs properly alleged their claim for unjust enrichment in the alternative. *Id.*, at 38.

The Court granted Defendant's motion as to other aspects but granted Plaintiffs leave to amend. *Id.*, at 38-39.[1] The Court specifically identified the following (now remedied) deficiencies:

***Family Disclosure***: The Court found that Plaintiffs did not allege the age of the minors and did not allege that the minors were third-party beneficiaries of the Family Disclosure. *Id.*, at 22.

***Implied Contract Claim***: The Court found that Plaintiffs relied on the same allegations of language and disclosures for the implied contract claim as the breach of express contract claim, instead of alleging this claim in the alternative to the extent that some of the language or disclosures are determined to not be part of the express contract. *Id.*, at 23.

***CIPA Claim***: Plaintiffs' allegations adequately pled most of the requirements for a violation of California's Invasion of Privacy Act ("CIPA"). *Id.*, at 27. However, the Court held that Plaintiffs' allegations lacked sufficient detail about the communications that Plaintiffs alleged were captured by Apple. *Id.*, at 27.

***WESCA Claim***: The Court determined that, as with Plaintiffs' CIPA claim, Plaintiffs' claim for violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") lacked sufficiently detailed allegations about webpages viewed and searches conducted. *Id.*, at 28-29.

***Invasion of Privacy Claim***: The Court found that Plaintiffs did not sufficiently allege a reasonable expectation of privacy to support their invasion of privacy claim. *Id.*, at 30.

***Omission Claim***: The Court found that Plaintiffs did not sufficiently allege a fraudulent omission claim. *Id.*, at 34.[2]

***UCL Claim***: The Court found that Plaintiffs adequately alleged a claim for violation of California's Unfair Competition Law ("UCL") based on Apple's misrepresentation of its "Share [Device] Analytics" setting, but that Plaintiffs did not adequately allege a claim based on the unfair or unlawful prongs of the UCL. *Id.* The Court also found that Plaintiffs' damages allegations under

---

[1] The Court dismissed Plaintiffs' claims based on the "Allow Apps to Request to Track" setting and, based on the Court's reasoning, Plaintiffs are no longer pursing a claim for violation of ICFDA based on the "Allow Apps to Request to Track" setting.

[2] In light of the Court's analysis in the Order, Plaintiffs are no longer pursuing a claim based on a theory of omission.

the UCL were inadequately pled as they lacked detail about Plaintiffs' experiences to tether their damages. *Id.*, at 35.

Since the Order, Plaintiffs have amended their complaint to address the Court's concerns. *See generally* FAC.

**B. Plaintiffs Amended the Consolidated Class Action Complaint to Address the Court's Concerns and Add New Allegations.**

Plaintiffs' FAC resolves the issues raised in the Court's Order as the following amendments were made:

***Child Plaintiffs***: The FAC now includes the ages of minor Plaintiffs A.H. and E.M. *Id.*, at ¶¶ 14, 19. Plaintiffs also alleged that the Child Plaintiffs and Minor Subclass are beneficiaries of the Family Disclosure. *Id*, at ¶ 121. Apple is not challenging the adequacy of the Child Plaintiffs' specific allegations in the FAC.

***Implied Contract Claim*:** Plaintiffs now allege their implied contract claims in the alternative to the express contract claim to the extent any of Apple's marketing statements, disclosures, website, and setting options are not included in the express contract created by the Privacy Policy. *Id.*, at ¶ 130.

***Content Collection Claim***: Plaintiffs' FAC now includes much more detailed allegations about the communications that Apple improperly collects, including, but not limited to the URL that Plaintiffs and the Class visited before using one of Apple's Apps, the terms searched for, separate identifiers for the items users searched for, and device location information. *Id.*, at ¶¶ 11-14, 17, 55-61. Further, Plaintiffs added details regarding the search terms they entered in Apple's Apps and the external websites they used, including healthcare websites - all of which Apple collected. *See id.*, at ¶¶ 11-14, 17.

***Expectation of Privacy Claim***: Plaintiffs now allege that they expected their usage data to remain private after revoking consent for Apple to collect it. They based this belief on Apple's public pronouncements of its respect for users' privacy, and its explicit statements that such data would not be collected. *See id.*, at ¶¶ 27, 35, 41, 43, 45.

***Damages Allegations***: Plaintiffs tethered each category of improperly collected data to the loss of value for such data and generally alleged loss of the price difference between Apple mobile

devices and those of Apple's competitors who do not make similar privacy-related promises. *See id.*, at ¶¶ 11-14, 17, 62-90.

Accordingly, Plaintiffs' FAC has remedied the Court's concerns from its Order. In addition to remedying the Court's concerns, Plaintiffs added a claim for use of a pen register or trap and trace device under Cal. Penal Code section 638.51. *Id.*, at ¶¶ 182-191.

## III. LEGAL STANDARD

At the motion to dismiss stage, "[w]hen considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. Such allegations must be construed in the light most favorable to the nonmoving party." *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021) (internal citations omitted). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may only be granted if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *9201 San Leandro LLC v. Precision Castparts Corp.*, 548 F. Supp. 2d 732, 734 (N.D. Cal. 2008) quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## IV. ARGUMENT

### C. Plaintiffs Sufficiently Alleged Apple Unlawfully Recorded Their Confidential Communications in Violation of CIPA Section 632.

Apple argues that Plaintiffs "fail to plead that the data they allege Apple collected was 'confidential' or a 'communication' or that Apple has engaged in eavesdropping or recording within the meaning of CIPA section 632." MTD at 13. Apple is wrong.

#### i. Plaintiffs Sufficiently Alleged Their Usage Data is Confidential.

Communications are "confidential" under CIPA if a party "had an objectively reasonable expectation that they were not being recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774 (2002). Here, the Court has already held that "Plaintiffs have plausibly alleged that they believed turning off the 'Share [Device] Analytics' setting effectively withdrew their consent to [the collection of] data about how Plaintiffs interact with Apple Apps" based on Apple's explanation of the setting. Order, at 20. Multiple courts have similarly held that settings similar to the "Share [Device] Analytics"

setting create "an objectively reasonable expectation of privacy in this specific information." *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022); *Brown*, 525 F. Supp. 3d 1049, 1074 (N.D. Cal. 2021) ("Google's policies did not indicate that data would be collected from users in private browsing mode and shared with Google."); *In re Facebook, Inc., Internet Tracking Litigation,* 956 F.3d 589, 603 (9th Cir. 2020) (finding "a reasonable expectation of privacy" given "Facebook's affirmative statements that it would not receive information from third-party websites after users had logged out").

Plaintiffs thus meet their burden. Plaintiffs turned off the "Share [Device] Analytics" setting with the intent to keep their usage data private from Apple. *See* FAC, at ¶¶ 11-20. Apple defines usage data as "[d]ata about your activity on and use of our offerings, such as app launches within our services, including browsing history; search history; product interaction; crash data, performance and other diagnostic data; and other usage data." *Id.*, at ¶ 41. Apple promised Plaintiffs that if they turned off the "Share [Device] Analytics" setting, Apple would not collect or record their usage data. FAC, at ¶¶ 40-41, 43-47. But despite Apple's promise not to do so, Apple has collected a litany of confidential information that falls squarely within its definition of usage data. For instance, Apple collected referral URLs of Plaintiff Green's financial institution and healthcare provider. FAC, at ¶ 12. Such information is considered confidential. *See e.g.*, *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) ("Plaintiff has plausibly alleged that the sensitive financial information being recorded is the type that could be reasonably considered confidential."); *Weston v. Perez*, 2017 WL 4541732, at *4 (S.D. Cal. Oct. 11, 2017) (discussing the importance of maintaining confidentiality of healthcare information). Further, Apple collected information about Plaintiffs' search terms in Apple's Apps, capturing Plaintiffs' internal thoughts, ideas, motives, and knowledge. *See* FAC, at ¶¶ 11-14, 17, 20; *see also People v. Drennan*, 84 Cal. App. 4th 1349, 1358 (2000). Plaintiffs allege that each instance of data collection described occurred after the "Share [Device] Analytics" setting was disabled and Plaintiffs had a reasonable expectation that their usage information was private. FAC, at ¶¶ 11-20.

Plaintiffs' reasonable expectation of privacy created by disabling the "Share [Device] Analytics" setting made their usage data confidential. Apple's collection of it was thus a violation of

CIPA Section 632.

**ii. CIPA Covers Client-Server Internet Communications.**

Defendant next argues that "CIPA's legislative history reinforces that it does not cover client-server Internet communications." MTD at 14. But CIPA is not as narrow as Defendant claims. Rather, CIPA is regularly applied to internet-based communications. *See e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) ("Plaintiffs adequately stated claims […] their claims under the Wiretap Act and CIPA."); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930–31 (N.D. Cal. 2024) ("courts have repeatedly held that other provisions of CIPA are not limited to the traditional versions of the tools at issue, based on the plain language of the statute, the California Supreme Court's pronouncements regarding the broad legislative intent underlying CIPA to protect privacy, and the California courts' approach to updating obsolete statutes in light of emerging technologies.") (citations omitted); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("courts have applied Section 631(a) via the language of its second clause to the internet browsing context.") (collecting cases). And although Apple points to the California Consumer Privacy Act of 2018 ("CCPA") as evidence that "electronic transmissions… are the subject of extensive regulation" in California (MTD at 14), that is no reason to not apply CIPA here. The "CCPA and CIPA are complementary," and "[e]ven if a conflict existed, Plaintiff[s] may bring [their] claim under CIPA" because "as CCPA states, 'the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control.'" *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (quoting Cal. Civ. Code § 1798.175)).

**iii. Plaintiffs' Data Collected by Apple Qualify as Communications Under CIPA.**

"[T]he term 'communication' for purposes of CIPA connotes a singular conversation or exchange shared between two or more participants." *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 607 (2020), as modified on denial of reh'g (Oct. 23, 2020). Here, Apple collects the URLs of referral websites that open its Apps, including URLs from healthcare providers and financial institutions. FAC, at ¶¶ 12, 55-59; *see In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d at 796 (healthcare provider URL constituted content under Wiretap Act). Apple also collects users' gender, user agent,

IP latitude, IP longitude, IP city, referral app name, destination URL, search terms, and user actions. FAC, at ¶¶ 54-60; *see Brown*, 685 F. Supp. 3d at 935 (alleging that defendant collected the users' IP addresses, referrers, user-agents, HTTP requests, users' actions on a website, and their search queries). As Plaintiffs alleged, all of these conversations occurred while Plaintiffs were using Apple's Apps with the "Share [Device] Analytics" setting turned off. FAC, at ¶¶ 11-20 ("Plaintiff […] used these mobile applications while 'Share [Device] Analytics' was turned off.").

As Apple repeatedly argues throughout its Motion, "[t]he Internet operates on a client-server model in which client devices (such as personal computers and smartphones) request services from servers." MTD, at 6 (quotation omitted). "After the device makes the request, the server processes the request and sends the appropriate data back to the client." *Id.* (quotation omitted). This transmitted information squarely fits within the definition of "communication." *See Gruber*, 55 Cal. App. 5th 591; *see also* MTD, at 15 (discussing definition of "communication"). Further, and importantly, this case is not about the collection of "necessary" data to permit Apple's Apps to function. Rather, it is about the large swaths of user data that Apple collects which are **unnecessary** for any App to function. Those are the collected "communications" at issue. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) (finding a privacy interest was appropriately alleged, in part, because "the amount of data allegedly collected was significant."). Accordingly, Plaintiffs have sufficiently alleged that they were engaging in communications when they used Apple's Apps and Apple improperly collected their usage data.

#### iv. Apple's Recording of Plaintiffs' Confidential Communications Justify a Claim Under CIPA.

This Court has already determined that Apple's Apps are recording devices. Order, at 25. Plaintiffs alleged that Apple promised not to record their usage data if they disabled the "Share [Device] Analytics" setting, but Apple recorded their usage data regardless. FAC, at ¶ 5, 11-20, 162-164. Apple previously stated that it records Plaintiffs' usage data and should not be permitted to deny those admissions when convenient. *See e.g.* ECF No. 123-10, at 2; ECF No. 123-11, at 2; ECF No. 123-12, at 2; ECF No. 123-13, at 4-5; ECF No. 123-14, at 3. Therefore, Plaintiffs have adequately alleged this element of their CIPA claim.

**D. Plaintiffs Sufficiently Alleged Apple Unlawfully Used a Pen Register in Violation of CIPA Section 638.51.**

Defendant argues that "no pen register is at issue here for four reasons: (1) first-party apps are not pen registers, (2) Section 638.51 applies to telephone communications, not Internet-connected apps, (3) the pen register provision governs law enforcement, not private parties, and (4) [P]laintiffs claim the data transmissions constitute communications, and pen registers, by definition, cannot capture communications." MTD at 9. Each of these arguments are wrong.

**i. Plaintiffs Sufficiently Alleged That Processes Within Apple's Apps Constitute Pen Registers.**

Defendant contends "an app that is the source of the data transmission cannot simultaneously be a pen register." MTD at 9. This argument misconstrues Plaintiffs' pen register claims. Specifically, Plaintiffs allege that it is the processes within Apple's Apps, not the applications as a whole, that operate as pen registers.

Section 638.51(a) of CIPA prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." *See Shah v. Fandom, Inc.,* 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024) (quoting Cal. Penal Code § 638.51). The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *See id.* (quoting Cal. Penal Code § 638.50(b)). Plaintiffs plead each element of this definition.

"As the court noted in *Greenley v. Kochava, Inc.*, '[t]he [pen register] definition is specific as to the type of data a pen register collects—dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but it is vague and inclusive as to the form of the collection tool—a device or process… [t]his indicates courts should focus less on the form of the data collector and more on the result." *Shah*, 754 F. Supp. 3d at 928 (quoting *Greenley,* 684 F. Supp. at 1050) (cleaned up). Here, Plaintiffs allege that Apple's apps contain processes tracking numerous usage data points that fall under the categories of "routing, addressing, or signaling information." Specifically, Plaintiffs' allege that processes within Apple's first-party apps collect, *inter alia*, Apple ID numbers, types of internet connection, device identifiers, event start and end timestamps, whether the event occurred offline or online, events specific to

opening or closing the applications, carrier codes, click targets, hardware information, languages selected by the user, information about the user's operating system and browser, and user's device capacity data and associated information. *See* FAC ¶¶ 54-60. To the extent that the Court determines that external referral URLs, referral app names, search terms, and actions the user took while interacting with a dialog are not communications, then the Court should consider that data to be routing information. Further, Apple collects geolocation data associated with user actions in many of its Apps, including the city from which the action occurred, the country from which the action occurred, the latitude of the IP-derived city, the longitude of the IP-derived city, the network from which the action occurred, the type of network from which the action occurred, and the region from which the action occurred. *See id.* ¶¶ 55-60.

That is sufficient to state a pen register claim. The processes within Apple's Apps "operate as pen registers under the meaning of the statute because they are processes that record users' IP addressing information, but not the content of the electronic communications being transmitted from users' computers or smartphones to [Apple's first-party apps]." *See Shah*, 754 F. Supp. 3d at 928 (holding theory sufficient to state a pen register claim).

Defendant, wringing its hands, argues that "it is not clear how any Internet-connected app or website could operate without a court order under plaintiffs' interpretation of Section 638.51, because the Internet Protocol requires some basic routing information to be transmitted for the Internet to work." MTD at 10. But this ignores Plaintiffs' well-plead allegations (discussed *supra*) that Defendant's collected information goes well beyond "basic routing information." This case does not simply concern data that is necessary for the functionality of the Apps, which Defendant has acknowledged may not function correctly if consent to collect data is withdrawn. *See* FAC, at ¶ 46. Rather, Plaintiffs allege that Defendant collects the broad data mentioned above so that it can monetize users' data even when users have specifically withdrawn their consent for Apple to do so by turning off their "Share [Device] Analytics" setting. Further, "[t]o the extent that [Defendant] believes the statute may impose too many burdens when applied to the realities of modern technologies, and that it is too unwieldy to obtain users' consent through disclosures of the practices at issue, the question of whether the statute's scope should be narrowed ultimately rests with the

Legislature, not the courts." *Shah*, 754 F. Supp. 3d at 933. Plaintiffs have plausibly alleged that the processes within Apple's Apps "operate as pen registers under the meaning of the statute, and that they were injured by being tracked in a way that they did not expect and to which they did not agree." *Id.* "That is sufficient at the pleadings stage." *Id.*

**ii. CIPA Section 638.51 Applies to the Internet.**

Defendant next argues that "the text and context of Section 638.51 demonstrate it does not regulate collection of Internet data, as opposed to telephone information." MTD at 10. But this argument has been repeatedly rejected. As argued *supra*, CIPA *does* encompass Internet communications as numerous courts have held. *See*, *e.g.*, *Mirmalek*, 2024 WL 5102709, at *3 (rejecting argument that "CIPA's pen register definition applies only to telephone technology.") (cleaned up); *Lesh*, 2025 WL 563358, at *4 ("CNN argues that CIPA's prohibition on pen registers does not apply to the Website but instead applies solely to the capture of telephone information. The Court is not persuaded that the scope of the statute is so narrow.") (cleaned up); *Moody*, 742 F. Supp. 3d at 1076 (applying statute to "[s]oftware [] embedded in the Website"); *cf. Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."). This Court should hold the same.

Relatedly, Defendant's attempt to shield itself with the CCPA should be disregarded for the same reasons set forth *supra*. As the CCPA notes:

> *Wherever possible*, law relating to consumers' personal information should be construed to harmonize with the provisions of this title, *but in the event of a conflict* between other laws and the provisions of this title, the provisions of the law that *afford the greatest protection for the right of privacy for consumers shall control*.

Cal. Civ. Code § 1798.175 (emphasis added). So, as the Court held in *Mirmalek*, 2024 WL 5102709, at *5, the "CIPA should control" to the extent there is a conflict between the two statutes.

**iii. CIPA Section 638.51 Applies to Private Companies.**

Defendant argues that "CIPA's pen register provision applies exclusively to law enforcement, not companies like Apple." MTD at 11. That exact argument was rejected in the *Greenley* case, in which the court noted that "private companies and persons have the ability to hack into a person's telephone and gather the same information as law enforcement," and thus opined that, "[p]erhaps for this reason, the California legislature does not limit its prohibition on installing pen registers to law

enforcement." *Greenley*, 684 F. Supp. 3d at 1050 (emphasis added) (comparing use of "person" in CIPA § 638.51(a) with "peace officer" in CIPA § 638.52).

Other courts have likewise rejected similar arguments to limit the scope of CIPA § 638.51 by referencing CIPA § 638.52. *See Shah*, 2024 WL 4539577, at *4 ("Although Fandom points to § 638.52, that section does not alter the definition of a pen register. Instead, that section lists the procedures that law enforcement officers must follow when applying for a pen register."); *Moody*, 742 F. Supp. 3d at 1076 ("Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement."). Rudimentary principles of statutory interpretation support these courts' reasoning. If the Legislature wanted the term "person" to mean only a "peace officer," they could have clearly defined it as such. *See Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion … Therefore, from the outset we presume that the terms have different meanings.") (cleaned up). Further, Defendant's interpretation does not make sense given the exception for "provider[s] of electronic or wire communication service[s]." Cal. Pen. Code § 638.51(b). If "person" meant "peace officer," there would be no need for this exception because said providers would already be outside the statute's scope. *See Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996) ("[T]erms of the same statute are not to be construed so as to be redundant."). Thus, the presence of the exception for certain types of service providers indicates that "person" was intended to cover private entities and not just "peace officers."

Finally, Defendant believes that the "rule of lenity likewise counsels in favor of limiting Section 638.51 to the law enforcement context, or the statute could be read to require all Internet-connected app or website owners to proactively seek a court order to operate." MTD at 12. "But the rule of lenity only applies where there is a grievous ambiguity or uncertainty in the language and structure of the statute." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 964 (S.D. Cal. 2011) (cleaned up). Here, there is no ambiguity—let alone "grievous ambiguity"—in the text of CIPA, and indeed, courts have rejected the rule of lenity's application to other provisions of CIPA. *Id.* at 965 ("Giles has at

most shown that a narrower interpretation of [CIPA] § 632 is conceivable, but that is insufficient to establish ambiguity."); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021) (declining to "apply the rule of lenity" to CIPA § 632.7). And "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests," which includes enforcement by private citizens. *See Shah*, 2024 WL 4539577, at *4.

**iv. Plaintiffs' Claims are Not Contradictory (Although it Would Not Matter if They Were).**

Last, Defendant argues that "Plaintiffs' new Section 638.51 claim [] should be dismissed for the additional reason that it is inconsistent with their Section 632 claim." MTD at 12. But the Court previously held that "Plaintiffs' allegations lack similar detail from which the Court can conclude the alleged collection constitutes a 'communication' under CIPA." Order, at 27. And although Plaintiffs amended their claims and believe they now sufficiently allege that "communications" were collected (*see supra* § IV.A.iii), whatever collected information does not rise to a "communication" under CIPA still certainly amounts to "routing, addressing, or signaling information" under § 638.50. Defendant cites no authority actually holding that an App cannot contain processes that operate as a pen register while simultaneously and separately containing processes that wiretap communications. Nor would such a holding make sense. To use Defendant's oft-invoked telephone example, a telephone could easily record both telephone routing information and phone call audio, in violation of both § 638.51 and § 632. Similarly, Plaintiffs allege that various processes within Apple's Apps collect a variety of information – some which are "communications" and some which are "routing, addressing, or signaling information." That is why CIPA covers both types of conduct, and why Plaintiffs allege that defendant violated both § 638.51 and § 632 of CIPA.

In the end though, the consistency of Plaintiffs' claims is irrelevant because Plaintiffs are permitted to plead their pen register claims in the alternative, which they have done. Fed. R. Civ. Proc. 8(d)(3) specifically provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Should the Court hold that Plaintiffs do not sufficiently allege that the data collected by Apple rises to the level of "communications," then the processes collecting such information (which Apple cannot at the pleading stage dispute it collected) give rise to a pen register claim.

### E. Plaintiff Sgro Properly Alleges Each Element of a WESCA Claim.

#### i. Plaintiff Sgro Properly Alleges Apple Collected the Contents of Communications

Plaintiff Sgro's allegation that Apple collected the contents of his communications is sufficient to support a WESCA Claim. WESCA defines the contents of a communication as "any information concerning the substance, purport, or meaning of that communication." 18 Pa. C.S. § 5702. Plaintiffs can show that the data collected by Apple qualifies as "content" versus "record information" by properly describing the information collected. *See James v. Walt Disney Company*, 2023 WL 7392285 *11 (N.D. Cal. Nov. 8, 2023) ("Plaintiffs have alleged that [the software] intercepted, e.g., information about the webpages they viewed and searches they conducted. This makes it unlikely that Plaintiffs are simply implicating record information ‒ i.e., information regarding the characteristics of a message as opposed to the substance of the message itself.").

Apple incorrectly argues that Plaintiff Sgro alleges insufficient details about the contents of communications that Apple collects to support his WESCA claim. To the contrary, Plaintiff Sgro alleges that Apple collects search terms, final search term, referral URLs—including those from financial institutions and healthcare providers—birth year, the start and stop time of using the App, age, gender, location, page history, user action, external referral app, and destination URL. *See* FAC, at ¶¶ 49-60.

Plaintiff Sgro was subject to this type of data collection. *See id.*, at ¶ 55-60. Plaintiff Sgro alleged that he searched the App Store for a variety of terms and opened the App Store through referral URLs. *Id.*, at ¶ 13. Plaintiff Sgro also alleged that this collection and recording of his usage data occurred while the "Share [Device] Analytics" setting was turned off. *Id.* Thus, Plaintiff Sgro has clearly alleged that Apple collected the contents of his communications, not just record information. Plaintiff Sgro's allegation that Apple collected the contents of his communications is sufficient to support a WESCA Claim.

#### ii. Apple Fails to Argue That Its Apps Are Not Devices.

Apple next argues that "plaintiffs fail again to allege collection by a 'device' as defined in WESCA." MTD at 18. But this argument relies on Apple's incorrect belief that "plaintiffs contend that their mobile devices are the intercepting devices." *Id.* Not so. Plaintiff Sgro contends that

Apple's Apps (and the processes therein) are the intercepting devices. FAC, at ¶ 202. The word "device" is broadly defined under WESCA as "[a]ny apparatus [...] that can be used to intercept a wire, electronic or oral communication." 18 Pa. Const. Stat. § 5702. Software thus is a device under WESCA because the "the definition exempts only instruments, equipment, facilities, or components appropriately characterized as "telephon[ic] or telegraph[ic]." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 975 (N.D. Cal. 2023) quoting 18 Pa. Const. Stat. § 5702; *see Oliver v. Noom, Inc.*, No. 2:22-CV-1857, 2023 WL 8600576, at *6 (W.D. Pa. Aug. 22, 2023) ("Session Replay Code on Noom's website falls within WESCA's broad definition of 'device.'"). Apple has thus failed to demonstrate that its Apps are not devices.

**iii. Plaintiff Sgro's Claim Can Proceed Even Though Apple Was the Direct Recipient of Data.**

Last, Apple argues that Plaintiff Sgro's claim cannot proceed because Apple was the direct recipient of any communications at issue. MTD at 19. However, WESCA requires all-party consent to record communications. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 128 (3d Cir. 2022). If the Court accepts Apple's argument that it can intercept the contents of Plaintiff Sgro's communications because it is a "direct party," "the all-party consent requirement [of WESCA] would disappear." *Id*. Apple makes much of the court's findings in *Commonwealth v. Proetto*, 771 A.2d 823, 831 (Pa. Super. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003) and *Commonwealth v. Cruttenden*, 58 A.3d 95, 98-100 (Pa. 2012) – cases that deal explicitly with law enforcement not private corporations – but ignores that WESCA was amended after these decisions were rendered. *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 127–28 (3d Cir. 2022) ("In adding [language to WESCA], the specific facts and holdings of *Proetto* and *Cruttenden*—exempting a law enforcement officer from liability for acquiring communications when he is an 'intended recipient' or is posing as one—are now explicitly included as a carve-out in the definition of 'intercept.' But this also limits the expansive reach of those cases.") (internal citations omitted). Further, Defendant cannot convincingly distinguish *Popa,* which is directly on point. While Plaintiffs knew they were interacting with Apple when using "Apps owned by Apple" and "search[ing] for" certain items in those apps (MTD at 19), that is not the conduct challenged in this case. Rather, what all Plaintiffs challenge is Apple's covert collection of

communications they had explicitly told Apple not to collect. Thus, it is immaterial to Plaintiff Sgro's claim that Apple was a direct recipient of communications data.

**F. Plaintiffs State a Claim for Invasion of Privacy.**

Apple states that to establish an invasion of privacy claim, "Plaintiffs must plead (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) a serious invasion of privacy constituting 'an egregious breach of . . . social norms.'" MTD at 19-20 (*citing Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994)). However, the Ninth Circuit has framed the inquiry as "whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. Contrary to Apple's assertions, case law in this District demonstrates that Plaintiffs' allegations meet either standard.

**i. Plaintiffs Have a Reasonable Expectation of Privacy.**

Defendant argues that Plaintiffs did not have any reasonable expectation of privacy in the data at issue because "[c]onsumers reasonably understand that when they search for apps, music, stocks, or books within Apple apps, or click a link to an Apple app on a third-party website, a transmission to Apple servers must occur to display the requested results." MTD at 20. But, as discussed *supra*, Defendant fights a straw man on this point. The data at issue is far broader than what Defendant suggests. This is not simply data that is necessary to gather for the functionality of the Apps. No reasonable consumer would think that by using an App that Defendant would be able to gather the user's "gender," "birth year," "latitude," or "longitude." FAC, at ¶¶ 55-59. Defendant also collects data related to a user's "URL." *Id*. Reasonable consumers would not expect Defendant to collect this data. Again, this data is not necessary for the functionality of any of the Apps, rather it is useful for Defendant's monetization of the data.

Additionally, reasonable consumers would not expect Defendant to have collected this data when Apple asked Plaintiffs if they would allow Apple to collect the data, Plaintiffs said no, and then Apple collected the usage data anyway. FAC, at ¶¶ 1-6, 11-20, 27-61. Courts in this District have found near identical allegations sufficient to state a claim for invasion of privacy. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1078 (N.D. Cal. 2021) ("Plaintiffs in the instant case could have reasonably assumed that Google would not receive their data while they were in private browsing

mode based on Google's representations."); *In re Facebook*, 956 F.3d at 602-03 ("Plaintiffs have plausibly alleged that, upon reading Facebook's statements in the applicable Data Use Policy, a user might assume that only logged-in user data would be collected. Plaintiffs have alleged that the applicable Help Center page affirmatively stated that logged-out user data would not be collected… the critical fact was that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway."); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (plaintiffs alleged "[the] interceptions took place after Google …. 'set an expectation' that it would not save plaintiffs' 'activity on ... apps ... that use Google services' unless plaintiffs turned WAA 'on.' … [i]n sum, the Ninth Circuit has left little doubt as to plaintiffs' intrusion upon seclusion and invasion of privacy claims. Both survive Google's motion to dismiss.") (*citing In re Facebook*, 956 F.3d at 602); *see also In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 293–94 (3d Cir. 2016) (holding, under analogous New Jersey law, that a reasonable expectation of privacy existed when Nickelodeon promised users that it would not collect information from website users, but then did anyways).

Here, Plaintiffs' allegations meet this standard. Defendant argues that the new allegations do not remedy the reasons that the Court previously dismissed this claim. But the Court specifically stated that "courts in the Ninth Circuit have recognized a reasonable expectation of privacy related to certain data collection." Order, at 30. In fact, the Court cited URLs as one type of data in which a consumer would have a reasonable expectation of privacy. Plaintiffs added allegations include specific facts that demonstrate that Defendant has not only collected URL data, but dozens of other categories of information as well. FAC ¶¶ 55-59.

**ii. Plaintiffs Have a Legally Protected Privacy Interest.**

"California has recognized [an] interest[] in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy')." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1232 (C.D. Cal. 2017) ("*In re Vizio*"). Courts have recognized that even the improper collection of URL information is legally protected. *In re Google I*, 806 F.3d at 151 ("California tort law treats as actionable an unwanted access to data by electronic or other covert means, in violation of the law or social norms.") (internal quotations omitted); *see also In re Vizio*,

238 F. Supp. 3d at 1232 ("[T]he Court rejects Vizio's argument that Plaintiffs have no cognizable interest in keeping detailed data about what video content they watch private."); *In re Facebook*, 956 F.3d at 603 ("In light of the privacy interests and Facebook's allegedly surreptitious and unseen data collection, Plaintiffs have adequately alleged a reasonable expectation of privacy.").

Defendant argues that Plaintiffs "cannot show an informational privacy interest in the alleged data transmissions from Apple's own services." MTD at 21. But Defendant's argument again relies on a straw man. As Plaintiffs have repeatedly discussed, Defendant pretends that this case is about Defendant merely collecting transmissions that are necessary for the core functionality of its Apps. But that is not true. Plaintiffs allege that Apple made explicit representations that it would not collect the usage data at issue, and then not only surreptitiously collected the data anyways, but also monetized the data to Apple's benefit and Plaintiffs' detriment. FAC ¶¶ 1-6, 11-20, 27-90.

**iii. Apple Committed a Serious Invasion of Privacy.**

Apple argues that Plaintiffs do not state a claim for an invasion of privacy because Plaintiffs do not allege why the information that was collected was "sensitive." MTD at 22. That is wrong. Notably, Plaintiffs allege that Apple surreptitiously collected electronic communications after making explicit representations that it would not do so. *See* FAC ¶¶ 1-6, 11-20, 27-61. "[C]ourts have held that 'deceit can be a kind of 'plus' factor [that is] significant in ... making a privacy intrusion especially offensive.'" *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021) (internal quotations omitted); *Brown v. Google LLC*, 525 F. Supp. 3d at 1079 ("Moreover, as explained above, Google's representations regarding private browsing mode could have led users to assume that Google would not view their activity while in private browsing mode.").

Ultimately, whether Apple's conduct was sufficiently offensive raises a question of fact. *See In re Google Location History Litig.*, 514 F. Supp. 3d 1147 ("Whether Google's collection and storage of location data when Location History was set to off was highly offensive to a reasonable person is a question of fact."). On that basis, the Ninth Circuit reversed the dismissal of an invasion of privacy claim where Facebook only obtained internet history—which is far less than the scope of information obtained here. *See In re Facebook*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot

be resolved at the pleading stage."); *Rodriguez*, 2021 WL 2026726, at *8 ("Nor is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to Facebook.") (*citing In re Facebook*, 956 F.3d at 602); *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (denying motion to dismiss because whether conduct is offensive is a factual question); *Opperman v. Path, Inc.*, 205 F. Supp. 3d at 1079 (N.D. Cal. 2016) ("*Opperman II*") (same). Thus, Apple asks the Court to make the same reversible error made in *In re Facebook*.

Apple partially relies on *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1132-33 (E.D. Cal. 2021), but that case does not support Apple's position. As Judge Tigar explained when analyzing a similar case in *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014) ("*Opperman I*"), *Mastel* is "distinguishable" because it did not involve the "surreptitious" acquisition of personal information. Judge Tigar likewise rejected the argument that secretly acquiring personal information—like Apple has done here—is "routine commercial behavior," and concluded that whether the conduct at issue was "highly offensive" was a factual dispute "best left for a jury." *Opperman I*, 87 F. Supp. 3d at 1061; *see also In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 797 ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."). This Court should do the same.

**G. Plaintiffs' UCL Claim is Well-Pleaded.**

**i. Plaintiffs Sufficiently Alleged Apple's Violations of the UCL.**

Plaintiffs have sufficiently pled their claim for violation of the UCL. As an initial point, Plaintiffs are not required to meet all three "prongs" of the UCL to state a claim. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("Each prong of the UCL is a separate and distinct theory of liability."). Here, Plaintiffs may adequately state a claim under the UCL's unlawful prong by stating a claim for breach of contract. *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL 4220824, at *5 (N.D. Cal. Aug. 22, 2014) ("Having found that Plaintiff has adequately stated a claim for breach of contract, the court also finds by extension that Plaintiff has adequately stated a claim under the UCL's unlawful prong."). And the Court already determined that Plaintiffs' allegations "sufficiently plead at least a misrepresentation based on the 'Share [Device] Analytics'

setting." Order, at 34. *See Birdsong*, 590 F.3d 955. Plaintiffs have thus sufficiently pled claims under the "unlawful" and "unfair" prongs of the UCL.

**ii. Plaintiffs Sufficiently Alleged Damages Under the UCL.**

Plaintiffs have sufficiently alleged that they suffered damages because of Apple's misrepresentations. Consumers suffer damages when they pay a price premium based on vendor misrepresentations. *See Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1168-69 (C.D. Cal. 2012) (holding that plaintiff who alleged he "paid a price premium" due to the misrepresentations of the defendant had "sufficiently plead[] an ascertainably loss under the out-of-pocket theory"). Privacy harms can also constitute economic harms under the UCL. *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *24 (N.D. Cal. Mar. 25, 2024) (privacy harms can constitute economic injury to confer UCL standing under three theories: unfair benefit-of-the-bargain to businesses who violate user expectations about how their data will be used, diminished value of personal information, and reduced right to exclude others from accessing personal data); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("[P]laintiffs who suffered a loss of their personal information suffered economic injury and had standing").

Plaintiffs would not have bought their Apple devices – or at the very least would have paid less for them – if they had known that Apple would not respect its own promises about privacy. FAC, at ¶ 178. And Apple's assertions misled Plaintiffs into believing they could prevent Apple from tracking and collecting their information and usage data by turning off the "Share [Device] Analytics" setting. In reliance on this misrepresentation, Plaintiffs continued to use Apple Apps and per *Forcellati,* suffered harm in the form of the loss of the economic value of their user data without the proper consideration. *See id.*, at ¶¶ 74-88. Therefore, Plaintiffs have sufficiently alleged that they suffered damages as a result of Apple's misrepresentations and violation of the UCL.

**H. Plaintiffs' Alternative Claims were Adequately Pled.**

"Plaintiffs 'may alternatively plead both a breach of contract claim and a quasi-contract claim, so long as [Plaintiffs] plead[] facts suggesting that the contract may be unenforceable or invalid.'" ECF No. 138 quoting *Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813, 821 (N.D. Cal. 2023). Here, Plaintiffs adequately pled a breach of implied contract in the alternative. FAC, at ¶¶ 128, 130.

Further, in support of their unjust enrichment claim, Plaintiff's alleged they lacked an adequate legal remedy, which the Court found was sufficient previously. *Id.*, at ¶ 305; Order, at p. 39. Therefore, Plaintiffs' alternative claims were adequately alleged.

**I. Game Center**

Defendant attacks Plaintiffs' allegations involving Game Center on the basis that it is not an App and seeks to dismiss any claim based on the Game Center. MTD, at 25. While Game Center may no longer be a stand-alone App, it used to be.[3] Furthermore, Plaintiffs used Game Center in their allegations to highlight that Apple collects the same type of data across all of its Apps. *See* FAC, at ¶ 54 ("Regardless of whether users have revoked consent for Apple to collect their usage data, Apple collects consumers' usage data through its Apps."); *id.*, at ¶ 58 (listing usage data that Apple collects through Game Center); *id.*, at ¶ 60 ("Apple collects and tracks similar usage data points for each of its Apps."). Accordingly, Defendant's argument regarding Game Center is meritless.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss First Amended Consolidated Complaint. Alternatively, Plaintiffs request leave to amend their Complaint. "[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995); *see Smith, et al., v. Santa Cruz County, et al.*, No. 5:21-CV-00421-EJD, 2023 WL 8360054, at *6 (N.D. Cal. Dec. 1, 2023) (J. Davila) (granting leave to amend); *Crittenden v. Apple, Inc.*, No. 5:21-CV-04322-EJD, 2023 WL 6149895, at *3 (N.D. Cal. Sept. 19, 2023) (J. Davila) (same); *Shruhan v. Apple Inc.*, No. 5:22-CV-05498-EJD, 2023 WL 6391497, at *8 (N.D. Cal. Sept. 29, 2023) (J. Davila) (same). Here, should the Court decide to grant Defendant's motion – which it should not, Plaintiffs respectfully request leave to amend.

[3] *See What's New in iOS*, APPLE, INC., available at https://developer.apple.com/library/archive/releasenotes/General/WhatsNewIniOS/Articles/iOS10.html (last accessed July 10, 2025) ("The Game Center app has been removed").

Dated: July 10, 2025

Respectfully submitted,

/s/ (Eddie) Jae K. Kim
**LYNCH CARPENTER, LLP**
(Eddie) Jae K. Kim (SBN 236805)
ekim@lcllp.com
Tiffine E. Malamphy (SBN 312239)
tiffine@lcllp.com
117 East Colorado Blvd., Suite 600
Pasadena, CA 91105
Telephone: (626) 550-1250
Facsimile: (619) 756-6991

**LYNCH CARPENTER, LLP**
Gary F. Lynch*
1133 Penn Avenue
Pittsburgh, PA 15232
Tel: (412) 322-9243
Fax: (412) 231-0246
gary@lcllp.com

Dated: July 10, 2025

/s/ L. Timothy Fisher
L. Timothy Fisher (SBN 191626)
*ltfisher@bursor.com*
**BURSOR & FISHER, P.A.**
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

Philip L. Fraietta (SBN 354768)
*pfraietta@bursor.com*
Matthew A. Girardi*
*mgirardi@bursor.com*
Julian C. Diamond*
*jdiamond@bursor.com*
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

*admitted *pro hac vice*
*Interim Co-Lead Counsel*

**FILER ATTESTATION**

I, (Eddie) Jae K. Kim, am the ECF user whose identification and password are being used to file this Stipulation. I hereby attest pursuant to Civil Local Rule 5-1(i)(3) that the aforementioned signatories have concurred in this filing.

Dated: July 10, 2025

*<u>/s/ (Eddie) Jae K. Kim</u>*
(Eddie) Jae K. Kim